VANTAGEPOINT VENTURE PART-
NERS 1996, a Delaware limited part-
nership, Defendant Below, Appellant,

v.

EXAMEN, INC., a Delaware
corporation, Plaintiff
Below, Appellee.

No. 127, 2005.

Supreme Court of Delaware.

Submitted: April 13, 2005.
Decided: May 5, 2005.

J. Travis Laster, Brock E. Czeschin, Philippe Y. Blanchard, Richards, Layton & Finger, Wilmington, DE, for appellant.

Martin P. Tully, David J. Teklits, and Thomas W. Briggs, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

HOLLAND, Justice:

This is an expedited appeal from the Court of Chancery following the entry of a final judgment on the pleadings. We have concluded that the judgment must be affirmed.

### Delaware Action

On March 3, 2005, the plaintiff-appellee, Examen, Inc. ("Examen"), filed a Complaint in the Court of Chancery against VantagePoint Venture Partners, Inc. ("VantagePoint"), a Delaware Limited Partnership and an Examen Series A Preferred shareholder, seeking a judicial declaration that pursuant to the controlling Delaware law and under the Company's Certificate of Designations of Series A Preferred Stock ("Certificate of Designations"), VantagePoint was not entitled to a class vote of the Series A Preferred Stock on the proposed merger between Examen and a Delaware subsidiary of Reed Elsevier Inc.

### California Action

On March 8, 2005, VantagePoint filed an action in the California Superior Court seeking: (1) a declaration that Examen was required to identify whether it was a "quasi-California corporation" under section 2115 of the California Corporations Code[1]; (2) a declaration that Examen was

---

1. Section 2115 of the California Corporations Code purportedly applies to corporations that

a quasi-California corporation pursuant to California Corporations Code section 2115 and therefore subject to California Corporations Code section 1201(a), and that, as a Series A Preferred shareholder, Vantage-Point was entitled to vote its shares as a separate class in connection with the proposed merger; (3) injunctive relief; and (4) damages incurred as the result of alleged violations of California Corporations Code sections 2111(F) and 1201.

### Delaware Action Decided

On March 10, 2005, the Court of Chancery granted Examen's request for an expedited hearing on its motion for judgment on the pleadings. On March 21, 2005, the California Superior Court stayed its action pending the ruling of the Court of Chancery. On March 29, 2005, the Court of Chancery ruled that the case was governed by the internal affairs doctrine as explicated by this Court in *McDermott v. Lewis*.[2] In applying that doctrine, the Court of Chancery held that Delaware law governed the vote that was required to approve a merger between two Delaware corporate entities.

On April 1, 2005, VantagePoint filed a notice of appeal with this Court. On April 4, 2005, VantagePoint sought to enjoin the merger from closing pending its appeal.

On April 5, 2005, this Court denied VantagePoint's request to enjoin the merger from closing, but granted its request for an expedited appeal.

### Merger Without Mootness

Following this Court's ruling on April 5, 2005, Examen and the Delaware subsidiary of Reed Elsevier consummated the merger that same day. This Court directed the parties to address the issue of mootness, simultaneously with the expedited briefing that was completed on April 13, 2005. VantagePoint argues that if we agree with its position "that a class vote was required, then VantagePoint could pursue remedies for loss of this right, including rescission of the Merger, rescissory damages or monetary damages." Examen submits that "the need for final resolution of the validity of the merger vote remains important to the parties and to the public interest" because a decision from this Court will conclusively determine the parties' rights with regard to the law that applies to the merger vote. We have concluded that this appeal is not moot.

### Facts

Examen was a Delaware corporation engaged in the business of providing web-

---

have contacts with the State of California, but are incorporated in other states. *See* Cal. Corp.Code §§ 171 (defining "foreign corporation"); and Cal. Corp.Code §§ 2115(a), (b). Section 2115 of the California Corporations Code provides that, irrespective of the state of incorporation, **foreign corporations' articles of incorporation are deemed amended** to comply with California law and are subject to the laws of California if certain criteria are met. *See* Cal. Corp.Code § 2115 (emphasis added). To qualify under the statute: (1) the average of the property factor, the payroll factor and the sales factor as defined in the California Revenue and Taxation Code must be more than 50 percent during its last full income year; and (2) more than one-half of its outstanding voting securities must be held

by persons having addresses in California. *Id.* If a corporation qualifies under this provision, California corporate laws apply "to the exclusion of the law of the jurisdiction where [the company] is incorporated." *Id.* Included among the California corporate law provisions that would govern is California Corporations Code section 1201, which states that the principal terms of a reorganization shall be approved by the outstanding shares of each class of each corporation the approval of whose board is required. *See* Cal. Corp.Code §§ 2115, 1201.

2. *McDermott Inc. v. Lewis*, 531 A.2d 206 (Del. 1987).

based legal expense management solutions to a growing list of Fortune 1000 customers throughout the United States. Following consummation of the merger on April 5, 2005, LexisNexis Examen, also a Delaware corporation, became the surviving entity. VantagePoint is a Delaware Limited Partnership organized and existing under the laws of Delaware. VantagePoint, a major venture capital firm that purchased Examen Series A Preferred Stock in a negotiated transaction, owned eighty-three percent of Examen's outstanding Series A Preferred Stock (909,091 shares) and no shares of Common Stock.

On February 17, 2005, Examen and Reed Elsevier executed the Merger Agreement, which was set to expire on April 15, 2005, if the merger had not closed by that date. Under the Delaware General Corporation Law and Examen's Certificate of Incorporation, including the Certificate of Designations for the Series A Preferred Stock, adoption of the Merger Agreement required the affirmative vote of the holders of a majority of the issued and outstanding shares of the Common Stock and Series A Preferred Stock, *voting together as a single class.* Holders of Series A Preferred Stock had the number of votes equal to the number of shares of Common Stock they would have held if their Preferred Stock was converted. Thus, VantagePoint, which owned 909,091 shares of Series A Preferred Stock and no shares of Common Stock, was entitled to vote based on a converted number of 1,392,727 shares of stock.

There were 9,717,415 total outstanding shares of the Company's capital stock (8,626,826 shares of Common Stock and 1,090,589 shares of Series A Preferred Stock), representing 10,297,608 votes on an as-converted basis. An affirmative vote of at least 5,148,805 shares, constituting a majority of the outstanding voting power on an as-converted basis, was required to approve the merger. If the stockholders were to vote by class, VantagePoint would have controlled 83.4 percent of the Series A Preferred Stock, which would have permitted VantagePoint to block the merger. VantagePoint acknowledges that, if Delaware law applied, it would not have a class vote.

### Chancery Court Decision

The Court of Chancery determined that the question of whether VantagePoint, as a holder of Examen's Series A Preferred Stock, was entitled to a separate class vote on the merger with a Delaware subsidiary of Reed Elsevier, was governed by the internal affairs doctrine because the issue implicated "the relationship between a corporation and its stockholders." The Court of Chancery rejected VantagePoint's argument that section 2115 of the California Corporation Code did not conflict with Delaware law and operated only in addition to rights granted under Delaware corporate law. In doing so, the Court of Chancery noted that section 2115 "expressly states that it operates 'to the exclusion of the law of the jurisdiction in which [the company] is incorporated.'"

Specifically, the Court of Chancery determined that section 2115's requirement that stockholders vote as a separate class conflicts with Delaware law, which, together with Examen's Certificate of Incorporation, mandates that the merger be authorized by a majority of all Examen stockholders voting together as a single class. The Court of Chancery concluded that it could not enforce both Delaware and California law. Consequently, the Court of Chancery decided that the issue presented was solely one of choice-of-law, and that it need not determine the constitutionality of section 2115.

### VantagePoint's Argument

■ According to VantagePoint, "the issue presented by this case is not a choice of law question, but rather the constitutional issue of whether California may promulgate a narrowly-tailored exception to the internal affairs doctrine that is designed to protect important state interests." VantagePoint submits that "Section 2115 was designed to provide an additional layer of investor protection by mandating that California's heightened voting requirements apply to those few foreign corporations that have chosen to conduct a majority of their business in California and meet the other factual prerequisite of Section 2115." Therefore, VantagePoint argues that "Delaware either must apply the statute if California can validly enact it, or hold the statute unconstitutional if California cannot." We note, however, that when an issue or claim is properly before a tribunal, "the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." [3]

### Standard of Review

In granting Examen's Motion for Judgment on the Pleadings, the Court of Chancery held that, as a matter of law, the rights of stockholders to vote on the proposed merger were governed by the law of Delaware—Examen's state of incorporation—and that an application of Delaware law resulted in the Class A Preferred shareholders having no right to a separate class vote. The issue of whether VantagePoint was entitled to a separate class vote of the Series A Preferred Stock on the merger is a question of law [4] that this Court reviews *de novo*. [5]

### Internal Affairs Doctrine

■ In *CTS Corp. v. Dynamics Corp. of Am.*, the United States Supreme Court stated that it is "an accepted part of the business landscape in this country for States to create corporations, to prescribe their powers, and to define the rights that are acquired by purchasing their shares." [6] In *CTS*, it was also recognized that "[a] State has an interest in promoting stable relationships among parties involved in the corporations it charters, as well as in ensuring that investors in such corporations have an effective voice in corporate affairs." [7] The internal affairs doctrine is a long-standing choice of law principle which recognizes that only one state should have the authority to regulate a corporation's internal affairs—the state of incorporation. [8]

■ The internal affairs doctrine developed on the premise that, in order to prevent corporations from being subjected to inconsistent legal standards, the authority to regulate a corporation's internal affairs should not rest with multiple jurisdic-

---

**3.** *Kamen v. Kemper Fin. Serv.*, 500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991).

**4.** *See, e.g., Warner Communications, Inc. v. Chris–Craft Indus., Inc.*, 583 A.2d 962 (Del. Ch.1989), *aff'd*, 567 A.2d 419 (Del.1989).

**5.** *See Kaiser Aluminum Corp. v. Matheson*, 681 A.2d 392, 394 (Del.1996).

**6.** *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 91, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987).

**7.** *Id.*

**8.** *McDermott Inc. v. Lewis*, 531 A.2d 206 (Del. 1987). *Accord State Farm Mut. Auto. Ins. Co. v. Superior Court*, 114 Cal.App.4th 434, 442, 8 Cal.Rptr.3d 56 (2d Dist.2003), *citing Edgar v. MITE Corp.*, 457 U.S. 624, 645, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982).

tions.[9] It is now well established that only the law of the state of incorporation governs and determines issues relating to a corporation's internal affairs.[10] By providing certainty and predictability, the internal affairs doctrine protects the justified expectations of the parties with interests in the corporation.[11]

The internal affairs doctrine applies to those matters that pertain to the relationships among or between the corporation and its officers, directors, and shareholders.[12] The Restatement (Second) of Conflict of Laws § 301 provides: "application of the local law of the state of incorporation will usually be supported by those choice-of-law factors favoring the need of the interstate and international systems, certainty, predictability and uniformity of result, protection of the justified expectations of the parties and ease in the application of the law to be applied."[13] Accordingly, the conflicts practice of both state and federal courts has consistently been to apply the law of the state of incorporation to "the entire gamut of internal corporate affairs."[14]

The internal affairs doctrine is not, however, only a conflicts of law principle. Pursuant to the Fourteenth Amendment Due Process Clause, directors and officers of corporations "have a significant right . . . to know what law will be applied to their actions"[15] and "[s]tockholders . . . have a right to know by what standards of accountability they may hold those managing the corporation's business and affairs."[16] Under the Commerce Clause, a state "has no interest in regulating the internal affairs of foreign corporations."[17] Therefore, this Court has held that an "application of the internal affairs doctrine is mandated by constitutional principles, except in the 'rarest situations,'"[18] e.g., when "the law of the state of incorporation is inconsistent with a national policy on foreign or interstate commerce."[19]

### California Section 2115

VantagePoint contends that section 2115 of the California Corporations Code is a limited exception to the internal affairs doctrine. Section 2115 is characterized as an outreach statute because it requires certain foreign corporations to conform to a broad range of internal affairs provisions. Section 2115 defines the foreign corporations for which the California statute has an outreach effect as those foreign

9. See Edgar v. MITE Corp., 457 U.S. at 645.

10. See CTS Corp. v. Dynamics Corp. of Am., 481 U.S. 69, 89–93, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987).

11. Id.

12. McDermott Inc. v. Lewis, 531 A.2d at 214.

13. Restatement (Second) of Conflict of Laws § 301 (1971). See Restatement (Second) of Conflict of Laws § 303 cmt. d (stressing importance of uniform treatment of shareholders).

14. McDermott Inc. v. Lewis, 531 A.2d at 216 (quoting John Kozyris, Corporate Wars and Choice of Law, 1985 Duke L.J. 1, 98 (1985)). The internal affairs doctrine does not apply where the rights of third parties external to the corporation are at issue, e.g., contracts and torts. Id.See also Rogers v. Guaranty Trust Co. of N.Y., 288 U.S. 123, 130–31, 53 S.Ct. 295, 77 L.Ed. 652 (1933).

15. McDermott Inc. v. Lewis, 531 A.2d at 216.

16. Id. at 217.

17. Id. (quoting Edgar v. MITE Corp. 457 U.S. 624, 645–46, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982)).

18. Id. (quoting CTS Corp. v. Dynamics Corp. of Am., 481 U.S. 69, 90, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987)).

19. Id.

corporations, half of whose voting securities are held of record by persons with California addresses, that also conduct half of their business in California as measured by a formula weighing assets, sales and payroll factors.[20]

VantagePoint argues that section 2115 "mandates application of certain enumerated provisions of California's corporation law to the internal affairs of 'foreign' corporations if certain narrow factual prerequisites [set forth in section 2115] are met." Under the California statute, if more than one half of a foreign corporation's outstanding voting securities are held of record by persons having addresses in California (as disclosed on the books of the corporation) on the record date, *and* the property, payroll and sales factor tests are satisfied, then on the first day of the income year, one hundred and thirty five days after the above tests are satisfied, *the foreign corporation's articles of incorporation are deemed amended to the exclusion of the law of the state of incorporation.*[21] If the factual conditions precedent for triggering section 2115 are established, many aspects of a corporation's internal affairs are purportedly governed by California corporate law to the exclusion of the law of the state of incorporation.[22]

In her comprehensive analysis of the internal affairs doctrine, Professor Deborah A. DeMott examined section 2115. As she astutely points out:

> In contrast to the certainty with which the state of incorporation may be determined, the criteria upon which the applicability of section 2115 hinges are not constants. For example, whether half of a corporation's business is derived from California and whether half of its voting securities have record holders with California addresses may well vary from year to year (and indeed throughout any given year). Thus, a corporation might be subject to section 2115 one year but not the next, depending on its situation at the time of filing the annual statement required by section 2108.[23]

### Internal Affairs Require Uniformity

In *McDermott*, this Court noted that application of local internal affairs law (here California's section 2115) to a foreign corporation (here Delaware) is "apt to produce inequalities, intolerable confusion, and uncertainty, and intrude into the domain of other states that have a superior claim to regulate the same subject matter

---

20. Cal. Corp.Code § 2115(a) (1977 & Supp. 1984).

21. *Id.*

22. If Section 2115 applies, California law is deemed to control the following: the annual election of directors; removal of directors without cause; removal of directors by court proceedings; the filing of director vacancies where less than a majority in office are elected by shareholders; the director's standard of care; the liability of directors for unlawful distributions; indemnification of directors, officers, and others; limitations on corporate distributions in cash or property; the liability of shareholders who receive unlawful distributions; the requirement for annual shareholders' meetings and remedies for the same if not timely held; shareholder's entitlement to cumulative voting; the conditions when a supermajority vote is required; limitations on the sale of assets; limitations on mergers; limitations on conversions; requirements on conversions; the limitations and conditions for reorganization (including the requirement for class voting); dissenter's rights; records and reports; actions by the Attorney General and inspection rights. *See* Cal. Corp.Code § 2115(b) (1977 & Supp.1984).

23. Deborah A. DeMott, *Perspectives on Choice of Law for Corporate Internal Affairs*, 48 Law & Contemp. Probs. 161, 166 (1985).

....">[24] Professor DeMott's review of the differences and conflicts between the Delaware and California corporate statutes with regard to internal affairs, illustrates why it is imperative that only the law of the state of incorporation regulate the relationships among a corporation and its officers, directors, and shareholders.[25] To require a factual determination to decide which of two conflicting state laws governs the internal affairs of a corporation at any point in time, completely contravenes the importance of stability within inter-corporate relationships that the United States Supreme Court recognized in *CTS*.[26]

In *Kamen v. Kemper Fin. Serv.*, the United States Supreme Court reaffirmed its commitment to the need for stability that is afforded by the internal affairs doctrine.[27] In *Kamen*, the issue was whether the federal courts could superimpose a universal-demand rule upon the corporate doctrine of all states.[28] The United States Supreme Court held that a federal court universal-demand rule would cause disruption to the *internal affairs* of corporations and that its holding in *Burks*[29] had counseled "against establishing competing federal—and state—law principles on the allocation of managerial prerogatives within [a] corporation."[30] In *Kamen v. Kemper*, the Restatement (Second) of Conflict of Laws was cited for the proposition that "[u]niform treatment of directors, officers and shareholders is an important objective which can only be attained by having the rights and liabilities of those persons with respect to the corporation governed by a single law."[31] If a universal-demand rule in federal courts would be disruptive because the demand rule in a state court would be different, *a fortiori*, it would be disruptive for section 2115's panoply of different internal affairs rules to operate intermittently within corporate relationships under either the law of California or the law of the state of incorporation—dependent upon the vissitudes of the ever-changing facts.

### State Law of Incorporation Governs Internal Affairs

In *McDermott*, this Court held that the "internal affairs doctrine is a major tenet of Delaware corporation law having important federal constitutional underpinnings."[32] Applying Delaware's well-established choice-of-law rule—the internal affairs doctrine—the Court of Chancery recognized that Delaware courts must apply the law of the state of incorporation to issues involving corporate internal affairs, and that disputes concerning a shareholder's right to vote fall squarely within the purview of the internal affairs doctrine.[33]

 Examen is a Delaware corporation. The legal issue in this case—whether a

**24.** *McDermott Inc. v. Lewis*, 531 A.2d 206, 216 (Del.1987) (quoting Kozyris at 98).

**25.** Deborah A. DeMott, *Perspectives on Choice of Law for Corporate Internal Affairs*, 48 Law & Contemp. Probs. 161, 166 (1985).

**26.** *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987).

**27.** *Kamen v. Kemper Fin. Serv.*, 500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991).

**28.** *Id.*

**29.** *Burks v. Lasker*, 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979).

**30.** *Kamen v. Kemper Fin. Serv.*, 500 U.S. at 106, 111 S.Ct. 1711.

**31.** *Id.* (quoting Restatement (Second) of Conflict of Laws § 302, cmt. e, p. 309 (1971)).

**32.** *McDermott Inc. v. Lewis*, 531 A.2d 206, 209 (Del.1987).

**33.** *See Rosenmiller v. Bordes*, 607 A.2d 465, 468–69 (Del.Ch.1991).

preferred shareholder of a Delaware corporation had the right, under the corporation's Certificate of Designations, to a Series A Preferred Stock class vote on a merger—clearly involves the relationship among a corporation and its shareholders. As the United States Supreme Court held in *CTS*, "[n]o principle of corporation law and practice is more firmly established than a *State's authority* to regulate domestic corporations, including the authority to *define the voting rights of shareholders.*" [34]

In *CTS*, the Supreme Court held that the Commerce Clause "prohibits States from regulating subjects that 'are in their nature national, or admit only of one uniform system, or plan of regulation,' " [35] and acknowledged that the internal affairs of a corporation are subjects that require one uniform system of regulation.[36] In *CTS*, the Supreme Court concluded that "[s]o long as each State regulates voting rights *only in the corporations it has created,* each corporation will be subject to the law of only one State." [37] Accordingly, we hold Delaware's well-established choice of law rules [38] and the federal constitution [39] mandated that Examen's internal affairs, and in particular, VantagePoint's voting rights, be adjudicated exclusively in accordance with the law of its state of incorporation, in this case, the law of Delaware.

### Any Forum—Internal Affairs— Same Law

■ VantagePoint acknowledges that the courts of Delaware, as the forum state, may apply Delaware's own substantive choice of law rules.[40] VantagePoint argues, however, that Delaware's "choice" to apply the law of the state of incorporation to internal affairs issues—notwithstanding California's enactment of section 2115—will result in future forum shopping races to the courthouse. VantagePoint submits that, if the California action in these proceedings had been decided first, the California Superior Court would have enjoined the merger until it was factually determined whether section 2115 is applicable. If the statutory prerequisites were found to be factually satisfied, VantagePoint submits that the California Superior Court would have applied the internal affairs law reflected in section 2115, "to the exclusion" of the law of Delaware—the state where Examen is incorporated.

In support of those assertions, VantagePoint relies primarily upon a 1982 decision by the California Court of Appeals in *Wilson v. Louisiana–Pacific Resources, Inc.*[41] In *Wilson v. Louisiana–Pacific Resources, Inc.*, a panel of the California Court of Appeals held that section 2115 did not violate the federal constitution by applying the California Code's mandatory cumula-

---

**34.** *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 89, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987) (emphasis added). *See* Restatement (Second) of Conflict of Laws § 304 (1971) (concluding that the law of the incorporating State generally should "determine the right of a shareholder to participate in the administration of the affairs of the corporation").

**35.** *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. at 89, 107 S.Ct. 1637 (quoting *Cooley v. Bd. of Wardens*, 53 U.S. 299, 319, 12 How. 299, 13 L.Ed. 996 (1851)).

**36.** *Id.*

**37.** *Id.* (emphasis added).

**38.** *McDermott Inc. v. Lewis*, 531 A.2d 206 (Del.1987).

**39.** *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987).

**40.** *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981).

**41.** *Wilson v. La.–Pac. Res., Inc.*, 138 Cal. App.3d 216, 187 Cal.Rptr. 852 (1982).

tive voting provision to a Utah corporation that had not provided for cumulative voting but instead had elected the straight voting structure set forth in the Utah corporation statute.[42] The court in *Wilson* did not address the implications of the differences between the Utah and California corporate statutes upon the expectations of parties who chose to incorporate in Utah rather than California.[43] As Professor DeMott points out, "[a]lthough it is possible under the Utah statute for the corporation's charter to be amended by the shareholders and the directors, that mechanical fact does not establish California's right to coerce such an amendment" whenever the factual prerequisites of section 2115 exist.[44]

*Wilson* was decided before the United States Supreme Court's decision in *CTS* and before this Court's decision in *McDermott*. Ten years after *Wilson*, the California Supreme Court cited with approval this Court's analysis of the internal affairs doctrine in *McDermott*, in particular, our holding that corporate voting rights disputes are governed by the law of the state of incorporation.[45] Two years ago, in *State Farm v. Superior Court*, a different panel of the California Court of Appeals questioned the validity of the holding in *Wilson* following the broad acceptance of the internal affairs doctrine over the two decades after *Wilson* was decided.[46] In *State Farm*, the court cited with approval the United States Supreme Court decision in *CTS Corp. v. Dynamics* [47] and our decision in *McDermott*.[48] In *State Farm*, the court also quoted at length that portion of our decision in *McDermott* relating to the constitutional imperatives of the internal affairs doctrine.[49]

Since *Wilson* was decided, the United States Supreme Court has recognized the constitutional imperatives of the internal affairs doctrine.[50] In *Draper v. Gardner*, this Court acknowledged the *Wilson* opinion in a footnote [51] and nevertheless permitted the dismissal of a Delaware action in favor of a California action in which a California court would be called upon to decide the internal affairs "demand" issue involving a Delaware corporation. As stated in *Draper*, we had no doubt that after the *Kamen* and *CTS* holdings by the United States Supreme Court, the California courts would "apply Delaware [demand] law [to the internal affairs of a Delaware corporation], given the vitality and constitutional underpinnings of the internal af-

---

**42.** *Id.* at 230–31, 187 Cal.Rptr. 852.

**43.** *Id.*

**44.** Deborah A. DeMott, *Perspectives on Choice of Law for Corporate Internal Affairs*, 48 Law & Contemp. Probs. 161, 187–88 (1985).

**45.** *See Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 11 Cal.Rptr.2d 330, 834 P.2d 1148, 1155 (1992), *citing McDermott Inc. v. Lewis*, 531 A.2d 206 (Del.1987).

**46.** *State Farm Mut. Auto. Ins. Co. v. Superior Court*, 114 Cal.App.4th 434, 8 Cal.Rptr.3d 56 (2d Dist.2003).

**47.** *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. at 89–90, 107 S.Ct. 1637.

**48.** *See State Farm Mut. Auto. Ins. Co. v. Superior Court*, 114 Cal.App.4th 434, 8 Cal.Rptr.3d 56 (2d Dist.2003).

**49.** *Id.* at 443–44, 8 Cal.Rptr.3d 56.

**50.** *E.g., Edgar v. MITE Corp.* 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982); *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987). *See also Kamen v. Kemper Fin. Serv.*, 500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991).

**51.** *Draper v. Gardner*, 625 A.2d 859, 867 n. 10 (Del.1993).

fairs doctrine." [52] We adhere to that view in this case.

### Conclusion

The judgment of the Court of Chancery is affirmed. The Clerk of this Court is directed to issue the mandate immediately.[53]

**52.** *Id.* at 867.

**53.** Supr. Ct. R. 4(f).