**GLOBAL LAUNCH, INCORPORATED, et al.**

v.

**WISEHART.**

2010-Ohio-1457.]

Court of Common Pleas of Ohio,
Franklin County.

No. 10CVH–01–880.

Decided March 4, 2010.

Luper Neidenthal & Logan, L.P.A., Luther L. Liggett Jr., and David M. Scott, for plaintiffs Global Launch ex rel. Rusty Blades, and Rusty Blades.

Douglas J. Hart; and Crabbe, Brown James, L.L.P., and Richard D. Wetzel Jr., for plaintiff Global Launch, Inc.

Shockley & Naylor Co., L.P.A., and Robert S. Naylor, for plaintiff the Ohio Co.

Mowery Youell & Galeano, Ltd., James S. Mowery Jr., and Nicholas W. Yaeger, for defendant.

---

FRYE, Judge.

## I. *Introduction*

{¶ 1} This case presents an unusual threshold issue: which of two lawyers is authorized to represent the main plaintiff in this case? Those who filed suit say it concerns intellectual property belonging to Global Launch, Incorporated, that is held improperly in the custody of defendant Frank Wisehart. The competing faction says that Wisehart is currently and lawfully a member of the board of directors, that this case should never have been brought, and that the lawyer who did so was not authorized to speak for Global Launch. Global Launch is a Delaware corporation, which creates the significant problem addressed below.

## II. *Procedural Background*

{¶ 2} After initiating suit, Global Launch filed a "motion for order of pre-judgment replevin" seeking recovery of computer software and hardware related to a concept that plaintiffs say is known as "Uchuze." According to the group that filed this suit, the Uchuze material belongs to Global Launch and is a trade secret.

{¶ 3} At the replevin hearing before a court magistrate, two lawyers asserted the authority to represent Global Launch. Purported corporate governance documents were offered, such as a formal "Certificate of actions taken by the Directors of Global Launch Incorporated." It recited that it had been prepared pursuant to Delaware law and bore the signature of three purported board members saying, in substance, that the attorney who filed this suit was not authorized to do so, that the allegations against Wisehart are false, and that another lawyer (Richard D. Wetzel) was the only authorized lawyer for the corporation.

{¶ 4} The transcript of proceedings before the magistrate further memorializes arguments of various parties over who has authority to speak for Global Launch. Apart from that hearing (which was adjourned by the magistrate so that the court could wade into the matter), defendant Wisehart filed a motion to dismiss the case; Global Launch (acting through alternative counsel Wetzel) filed a motion to disqualify attorney Hart who had filed the case; the original plaintiffs

filed a motion to disqualify attorney Wetzel; and for good measure, plaintiffs filed a motion to disqualify attorney Mowery for an alleged conflict of interest from past representation of the three purported plaintiffs and current work in tandem with Wetzel. Responsive memoranda, affidavits and additional corporate documents fill out the record. All counsel were heard at a status conference on the record held February 26.

### III. *The Internal–Affairs Doctrine*

{¶ 5} The court confronts an issue over which set of corporate directors legally holds office in Global Launch. Once that issue is resolved, the dueling through disqualification motions will end or be substantially reduced in scope.

{¶ 6} If a dispute over internal corporate governance involves an Ohio corporation, the legal remedy is clear. R.C. 2733.01, et seq. codifies the remedy of quo warranto which is invoked when a person allegedly usurps, intrudes into, or unlawfully holds or exercises an office in a corporation. Such cases must be brought in a court of appeals or before the Supreme Court of Ohio. R.C. 2733.03; Sections 2(B)(1)(a) and 3(B)(1)(a), Article IV, Ohio Constitution. The validity of an election of members of a corporate board falls squarely within the quo warranto remedy. R.C. 2733.15; *State ex rel. Babione v. Martin* (1994), 97 Ohio App.3d 539, 544, 647 N.E.2d 169, *Capri v. Johnson* (1972), 32 Ohio App.2d 95, 101, 61 O.O.2d 93, 288 N.E.2d 604. However, that remedy is limited to corporations created under the authority of Ohio. R.C. 2733.01(A).

{¶ 7} The statutory limitation on using the quo warranto remedy merely recognizes the "internal-affairs doctrine." That doctrine means, quite simply, that " 'the law of the state of incorporation normally determines issues relating to the internal affairs of a corporation.' " *Bryan v. DiBella*, Frankliln App. No. 08AP–418, 2009-Ohio-1101, 2009 WL 638472, ¶ 13, quoting *First Natl. City Bank v. Banco Para el Comercio Esterior de Cuba* (1983), 462 U.S. 611, 621, 103 S.Ct. 2591, 77 L.Ed.2d 46; *State ex rel. Petro v. Gold,* 166 Ohio App.3d 371, 2006-Ohio-943, 850 N.E.2d 1218, at ¶ 46–47. As *DiBella* and *Gold* make clear, however, the internal-affairs doctrine applies only to disputes inside a corporation or among those affiliated with the corporate structure. It does not apply to relationships between a third-party creditor or a receiver and the corporation.

{¶ 8} "[M]ost states adhere to the internal affairs doctrine." Note, The Internal Affairs Doctrine: Theoretical Justifications and Tentative Explanations for its Continued Primacy (2002), 115 Harv.L.Rev. 1480. Delaware recognizes the internal-affairs doctrine, and indeed, a leading decision there has relied upon several United States Supreme Court decisions in holding that it is not merely a principle of judge-made conflicts law but a rule rooted in the Constitution. *McDermott Inc. v. Lewis* (Del.1987), 531 A.2d 206, 216; see also *Vantagepoint*

*Venture Partners 1996 v. Examen, Inc.* (Del.2005), 871 A.2d 1108, Restatement of the Law 2d, Conflict of Laws (1971) Section 302; and Brennan Lecture: The Reach of State Corporate Law Beyond State Borders: Reflections Upon Federalism (2009), 84 N.Y.U.L.Rev. 1149 (in which Delaware Supreme Court Justice Jack B. Jacobs reviews case law as to whether the doctrine is only a choice-of-law canon or one with a federal constitutional basis). Viewed purely as a conflict rule, the internal-affairs doctrine is comparable to an implicit contract choice-of-law provision. It focuses corporate-governance questions on only one state, not potentially multiple jurisdictions having arguable ties to the business and that might seek to impose idiosyncratic governance requirements.

{¶ 9} As in Ohio, under Delaware law "[t]he internal affairs doctrine applies to those matters that pertain to the relationships among or between the corporation and its officers, directors and shareholders. * * * Accordingly, the conflicts practice of both state and federal courts has consistently been to apply the law of the state of incorporation to 'the entire gamut of internal corporate affairs.'" *Vantagepoint Venture Partners 1996*, 871 A.2d at 1113.

## IV. *Ohio's Limitation on Jurisdiction*

{¶ 10} Accepting then that Delaware corporate law must be applied to determine which of the two groups competing for control of Global Launch has legitimacy, the next question is whether this court can apply Delaware law and make that decision. For several reasons, this court concludes that it cannot and that the parties must instead go to Delaware Chancery Court (or another forum with jurisdiction) to litigate questions of internal governance.

{¶ 11} The Ohio Supreme Court limited the jurisdiction of Ohio courts in controversies like this one in *Relief Assn. of the Union Works v. Equitable Life Assur. Soc.* (1942), 140 Ohio St. 68, 23 O.O. 290, 42 N.E.2d 653. The two paragraphs of the syllabus state Ohio law as follows:

{¶ 12} "1. Comity and the necessity for uniformity of decision require that the courts of one state shall not exercise visitorial powers over a corporation created by or domiciled in another state."

{¶ 13} "2. Courts of Ohio are without jurisdiction to entertain an action against a foreign corporation where the result of granting the relief asked would be to interfere with the management of such corporation or the exercise by the board of directors of such corporation of a discretion vested in them by the laws of the state of creation or domicile of the corporation."

{¶ 14} To be sure, the decision in *Relief Assn. of the Union Works* was decided relatively long ago and was premised upon "[t]he principle that the jurisdiction of state courts is limited by state boundaries." Id. at 79, 23 O.O. 290, 42 N.E.2d

653. Since that decision was announced, the concept of long-arm jurisdiction has developed and has expanded the reach of individual state courts, just as jet aircraft and digital electronics gave rise to a global economy. Nevertheless, the limitation on Ohio court jurisdiction has never been set aside. In a later case, it was observed that "[w]hen incorporators from a foreign corporation or shareholders acquire stock in a foreign corporation, they presumably accept supervision by the state authorizing creation of that corporation's internal affairs." *State ex rel. Corrigan v. Great Northern–Chan Rest., Inc.* (1982), 3 Ohio App.3d 355, 357, 3 OBR 412, 445 N.E.2d 732 (dismissing quo warranto action in Ohio seeking to address the election of directors and officers of a Delaware corporation).

{¶ 15} The decision in *Relief Assn. of the Union Works* was applied in *Chastang v. Mut. Life Ins. Co. of New York* (1946), 77 Ohio App. 433, 438–439, 33 O.O. 298, 65 N.E.2d 873. That case was brought by a policyholder who sought a declaratory judgment that dividends on his life insurance policy (with disability benefits included) should not be less than dividends paid on policies without a disability-benefits provision. Recognizing the jurisdictional holding of *Relief Assn. of the Union Works,* the court of appeals first addressed whether the case required an Ohio court to "exercise visitorial power" over the New York insurer's internal affairs. It concluded that it did not. "The relief sought will not interfere with the internal management of the defendant company or in any manner disturb the board of directors in the exercise of a discretion vested in them by the laws of the state of New York." Id. Similarly, the Tenth District decision last year in *Bryan v. DiBella,* 2009-Ohio-1101, 2009 WL 638472, arose from a suit by a shareholder who challenged action by an officer and director of a Delaware company and the sale of its assets to a third party. While the internal-affairs doctrine applied as a conflict-of-laws principle so that Delaware law was used to determine directors' or officers' liability, the entitlement to corporate office was not in issue. Hence, the jurisdictional bar recognized in *Relief Assn. of the Union Works* did not come into play.

{¶ 16} Not all state courts hold that the internal-affairs doctrine is jurisdictional. Some treat internal-affairs cases as presenting a forum nonconveniens situation in which the question is whether to exercise jurisdiction, not whether judicial power exists at all. See, e.g., *Belk v. Belk's Dept. Store* (1959), 250 N.C. 99, 104, 108 S.E.2d 131 (citing Ohio, Maryland, Washington, and Alabama as states in which the question is jurisdictional).

{¶ 17} As reviewed in the Note, 115 Harv.L.Rev. 1480, and many authorities referenced above, both practical and theoretical reasons justify the internal-affairs doctrine. Some of them also arguably support continuing to limit jurisdiction in Ohio for cases like this one. After all, like the law's general inclination to enforce legitimate contractual provisions, consigning these disputing directors to

the Delaware courts merely leaves them where they (or the incorporators of Global Launch) placed themselves. Foreclosing use of Ohio courts in such cases also saves Ohio taxpayers—and scarce judicial resources—when parties consciously selected foreign law and pay their corporate franchise fees to another state. (According to the Note, 115 Harv.L.Rev., at 1481, fn. 15, "[i]n 1986, Delaware received 16% of its revenues from corporation fees"). Ultimately, such policy questions must be addressed in the Supreme Court of Ohio if the 1942 decision in *Relief Assn. of the Union Works* is revisited.

{¶ 18} It is well settled that a court has the power to stay proceedings in one suit pending decision in another. *Landis v. N. Am. Co.* (1936), 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153; *Norwood v. Horney,* 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, at ¶ 118. Imposing a stay in this circumstance seems a sensible use of this court's authority.

## V. *Conclusion*

{¶ 19} This case is stayed pending initiation of a quo warranto or comparable proceeding before the Delaware Chancery Court (or such other court as may have authority to settle the corporate-control question presented). If no proceeding in Delaware is initiated within 90 days, this action will be dismissed without prejudice. Otherwise, this case will remain stayed pending a final determination as to which purported directors actually hold office and legally control Global Launch's internal affairs.

So ordered.