June 1, 2018

**Supreme Court**

No. 2017-272-Appeal.
(PC 15-4645)

Christopher G. Rein        :

            v.                    :

ESS Group, Inc., et al.        :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Christopher G. Rein           :

v.                 :

ESS Group, Inc., et al.        :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** The plaintiff, Christopher G. Rein (Rein or plaintiff), appeals from a Superior Court order granting a motion to dismiss brought by the defendants, ESS Group, Inc. (ESS), Charles J. Natale, Jr. (Natale), and the Charles J. Natale, Jr. 2003 Trust u/d/t January 23, 2003, as amended (the Natale trust) (collectively defendants). This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm in part and reverse in part the order of the Superior Court.

**I**

**Facts and Travel**

Rein began working at ESS in 2007 as a senior consultant and senior project manager. Previously, he had worked at ESS's predecessor, Environmental Science Services, Inc., for approximately thirteen years. On December 20, 2007, Rein, ESS, and Natale, the president and

chief executive officer of ESS, entered into a stockholder agreement that resulted in Rein owning 5,000 shares of ESS stock and the Natale trust owning 80,300 shares of ESS stock.

In his complaint, Rein alleged that in 2013 he became concerned about Natale's use of ESS's assets and funds. In December 2013, Natale informed Rein that ESS would not be giving employees payments pursuant to its incentive compensation plan because ESS had not met its annual revenue goal. Natale allegedly told Rein that certain employees would nevertheless receive an annual bonus outside of the incentive compensation plan. Rein asked to review the list of employees who would be receiving an annual bonus and the amount of said bonuses, but Natale refused to provide Rein with that information. In February 2014, Natale and Rein met and discussed the incentive compensation plan and bonuses. Rein alleged that, at this meeting, Natale accused Rein of not trusting him and told Rein that he could not review ESS's financial documents because he was a minority shareholder. Subsequently, in mid-2014, Rein received a negative performance review from Natale, which Rein claimed was the first negative performance review of his career.

On December 11, 2014, Natale and Rein met to discuss matters related to ESS's year-end. Thereafter, Natale gave Rein the minutes of the December 11, 2014 meeting, which Natale characterized as an ESS shareholder meeting. Rein alleged, however, that his December 11, 2014 meeting with Natale was not a shareholder meeting because it was not conducted pursuant to ESS's corporate bylaws or the provision of the Rhode Island Business Corporation Act (BCA) pertaining to shareholder meetings, G.L. 1956 § 7-1.2-701. Rein further claimed that the minutes falsely represented that certain topics were discussed and voted on at the purported shareholder meeting.

At the end of December 2014, Rein sent a letter to ESS's counsel requesting certain financial information pertaining to ESS, but counsel informed him that he could not legally provide Rein with the requested information because his request did not comply with state law. Rein alleged that he also asked defendants for permission to review ESS's books and records, but was refused access to do so. Rein obtained counsel and filed a formal request to review ESS's books and records, but he was again informed by ESS's counsel that his request did not comply with the law.

On May 27, 2015, Rein was terminated from his position as senior vice president. Rein alleged, in his lawsuit, that he was terminated due to his complaints to his supervisors, including Natale, that defendants had violated state and municipal laws, and due to his refusal to violate the law or assist defendants in doing so. After his termination, Rein initiated a shareholder derivative action against defendants in Delaware, where ESS is incorporated; however, the action was dismissed on July 27, 2015.

On October 23, 2015, Rein filed a two-count complaint in Superior Court in Rhode Island, wherein he alleged that: defendants had violated the Rhode Island Whistleblowers' Protection Act, G.L. 1956 chapter 50 of title 28 (WPA), by discriminating against Rein "because he refused to violate or assist in violating state or local law and/or because [Rein] reported to his supervisors a violation of state or local law" (the WPA count or claim); and defendants violated the BCA by refusing to allow Rein to examine ESS's books and records of accounts, minutes, and/or records of shareholders of ESS (the BCA count or claim). In response, defendants moved to dismiss the action pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure. In support of their motion, defendants maintained that the WPA count should be dismissed because Rein did not identify a law that defendants had allegedly violated, as is necessary under

the WPA. The defendants also argued for dismissal of the BCA count because ESS is incorporated in Delaware and, therefore, its internal affairs are governed by Delaware law, not Rhode Island law.

Rein objected to defendants' motion to dismiss. He rejected defendants' argument that he failed to set forth a law that defendants allegedly violated; Rein maintained that the complaint alleged that defendants' conduct violated the BCA. Rein argued that, even if ESS was not subject to the BCA because the company is incorporated in Delaware, the WPA claim is nevertheless viable because the complaint also alleged that defendants made false representations in the minutes of the December 11, 2014 meeting, which Rein maintained amounted to a violation of the common law. With respect to the BCA count, Rein asserted that ESS is subject to the BCA because, pursuant to § 7-1.2-1402, a foreign corporation "is subject to the same duties, restrictions, penalties, and liabilities now or subsequently imposed upon a domestic corporation of like character."

A hearing was held on April 5, 2016, before a justice of the Superior Court. After hearing the parties' arguments, the hearing justice rendered his decision. He first discussed the BCA count and referenced § 7-1.2-1401, which provides, in part, that:

> "A foreign corporation may not be denied a certificate of authority because the laws of the state or country under which the corporation is organized governing its organization and internal affairs differ from the laws of this state, and *nothing contained in this chapter authorizes this state to regulate the organization or the internal affairs of the corporation.*" Section 7-1.2-1401(a) (emphasis added).

The hearing justice equated this language to the so-called "internal affairs doctrine," although he noted that Rhode Island has not adopted the doctrine. He cited to *VantagePoint Venture Partners 1996 v. Examen, Inc.*, 871 A.2d 1108 (Del. 2005), in which the Supreme Court of

- 4 -

Delaware described the internal affairs doctrine as providing that "only one state should have the authority to regulate a corporation's internal affairs—the state of incorporation." *VantagePoint Venture Partners 1996*, 871 A.2d at 1112. Further, the hearing justice noted that the BCA provisions that Rein alleged defendants violated all use the term "corporation," not "foreign corporation," and that the BCA defines the term "corporation" to exclude foreign corporations. *See* § 7-1.2-106(3). The hearing justice concluded that "since the definitions exclude foreign corporations, it's clear that the Internal Corporate Affairs Doctrine applies and the allegations, the breach of the [BCA], even taken as true, cannot be violations of the act as a matter of law * * *." Accordingly, he dismissed the BCA count.

The hearing justice then discussed the WPA count and found that Rein's complaint did not "artfully articulate" which statute defendants had allegedly violated. He deemed Rein's argument that Natale's misrepresentation that there had been a shareholder meeting constituted fraud that violated the common law to be an erroneous interpretation of the WPA. The hearing justice stated, "[W]e don't even know if it's a violation, but the alleged violation, if it was a violation, would violate the Delaware Business Corporations Act because Rhode Island doesn't regulate the internal affairs of the corporation * * *." Accordingly, the hearing justice determined that Rein's complaint failed to state a claim upon which relief could be granted, and he dismissed the action. An order granting defendants' motion to dismiss and dismissing Rein's complaint was entered on April 22, 2016. On May 11, 2016, Rein appealed to this Court.

## II

### Standard of Review

"In reviewing the grant of a motion to dismiss pursuant to Rule 12(b)(6), this Court applies the same standard as the hearing justice." *Goddard v. APG Security-RI, LLC*, 134 A.3d

173, 175 (R.I. 2016) (quoting *Ho-Rath v. Rhode Island Hospital*, 115 A.3d 938, 942 (R.I. 2015)). In conducting our review, we "assume[] the allegations contained in the complaint to be true and view[] the facts in the light most favorable to the plaintiffs." *Id.* (quoting *Ho-Rath*, 115 A.3d at 942). The granting of a motion to dismiss is proper "when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief from the defendant under any set of facts that could be proven in support of the plaintiff's claim." *Id.* (quoting *Ho-Rath*, 115 A.3d at 942).

**III**

**Discussion**

On appeal, Rein maintains that the hearing justice erred in granting defendants' motion to dismiss after finding that Rein's complaint failed to state a claim under the WPA and that ESS is not subject to the BCA because it is incorporated in Delaware. Because the WPA count relies, in part, on defendants' alleged violations of the BCA, we will first address the BCA count.

**A**

**The BCA Count**

Rein asserts that defendants violated two provisions of the BCA: Section 7-1.2-701, by improperly conducting the shareholder meeting, and § 7-1.2-1502, by not allowing Rein to examine ESS's financial records. The hearing justice dismissed the BCA count after finding that defendants' conduct did not violate the BCA because Rhode Island has no authority to regulate the internal affairs of a foreign corporation, such as ESS, and the provisions that defendants allegedly violated, §§ 7-1.2-701 and 7-1.2-1502, do not apply to defendants because the provisions use the term "corporation," not "foreign corporation." Although it is uncontested that ESS is a foreign corporation, Rein argues that ESS is nevertheless subject to the BCA because § 7-1.2-1402 provides that "[a] foreign corporation which has received a certificate of authority

under this chapter * * * except as otherwise provided in this chapter, is subject to the same duties, restrictions, penalties, and liabilities now or subsequently imposed upon a domestic corporation of like character."

Notably, § 7-1.2-1401(a), which governs the admission of foreign corporations to transact business in Rhode Island, provides that "nothing contained in this chapter authorizes this state to regulate the organization or the internal affairs of the corporation." Therefore, we note, as the hearing justice did, that although § 7-1.2-1402 states that a foreign corporation is subject to the same duties as domestic corporations "except as otherwise provided[,]" § 7-1.2-1401(a) expressly provides that Rhode Island is not authorized to regulate the internal affairs of a foreign corporation. The hearing justice likened the language of § 7-1.2-1401(a) that restricts Rhode Island from regulating the internal affairs of a foreign corporation to the internal affairs doctrine, although he noted that Rhode Island has not formally adopted the doctrine.

It is therefore necessary to determine whether defendants' challenged conduct constitutes "internal affairs" as used in § 7-1.2-1401(a). Because neither the BCA nor Rhode Island caselaw have defined "internal affairs" or discussed the internal affairs doctrine, it is instructive to refer to Delaware's jurisprudence. *See Bove v. Community Hotel Corp. of Newport, Rhode Island*, 105 R.I. 36, 41-42, 249 A.2d 89, 93 (1969) (referring to Delaware's body of corporate law where Rhode Island law had not addressed the issue because Delaware "is important as a state of incorporation, and the decisions of its courts on the precise problem * * * are generally considered to be the leading ones in the field"). As noted above, the Supreme Court of Delaware has described the internal affairs doctrine as "a long-standing choice of law principle which recognizes that only one state should have the authority to regulate a corporation's internal

affairs—the state of incorporation."[1] *VantagePoint Venture Partners 1996*, 871 A.2d at 1112. Under Delaware law, "[t]he term 'internal affairs' encompasses 'those matters that pertain to the relationships among or between the corporation and its officers, directors, and shareholders.'" *Sagarra Inversiones, S.L. v. Cementos Portland Valderrivas, S.A.*, 34 A.3d 1074, 1082 (Del. 2011) (quoting *VantagePoint Venture Partners 1996*, 871 A.2d at 1113).

Guided by the above-mentioned definition of "internal affairs," we are convinced, as was the hearing justice, that defendants' alleged violations of the BCA qualify as "internal affairs," which Rhode Island is unauthorized to regulate. Specifically, the BCA provisions that Rein alleged defendants violated are § 7-1.2-701,[2] which governs how shareholder meetings are to be

---

[1] The United States Supreme Court recognized the internal affairs doctrine in *CTS Corporation v. Dynamics Corporation of America*, 481 U.S. 69 (1987), stating:

> "This beneficial free market system depends at its core upon the fact that a corporation—except in the rarest situations—is organized under, and governed by, the law of a single jurisdiction, traditionally the corporate law of the State of its incorporation.
> " * * *
>      "It thus is an accepted part of the business landscape in this country for States to create corporations, to prescribe their powers, and to define the rights that are acquired by purchasing their shares." *CTS Corporation*, 481 U.S. at 90, 91.

[2] General Laws 1956 § 7-1.2-701 provides, in relevant part:

> "(b) Special meetings of the shareholders may be called by the board of directors, or by a person or persons that may be authorized by the articles of incorporation or by the bylaws.
>
> "(c) Notice of any meeting of shareholders must be delivered not less than ten (10) nor more than sixty (60) days before the date of the meeting to each shareholder entitled to vote at the meeting in the manner prescribed by § 7-1.2-702."

conducted, and § 7-1.2-1502,[3] which regulates a corporation's maintenance of its books and records and provides shareholders and others with a right to examine said records. This Court is of the opinion that the manner in which a corporation conducts its shareholders meetings, § 7-1.2-701, and the processes by which shareholders and others exercise their right to review a corporation's books and records, § 7-1.2-1502, qualify as "matters that pertain to the relationships among or between the corporation and its officers, directors, and shareholders." *Sagarra Inversiones, S.L.*, 34 A.3d at 1082. Therefore, we conclude that ESS's alleged BCA violations are "internal affairs" that Rhode Island has no authority to regulate.

This Court is further convinced that ESS's alleged violations of §§ 7-1.2-701 and 7-1.2-1502 are internal affairs when we look to the language of the two provisions. In particular, both provisions use the term "corporation"—not "foreign corporation." The BCA defines a "corporation" or "domestic corporation" as "a corporation for profit subject to the provisions of this chapter, *except a foreign corporation*." Section 7-1.2-106(3) (emphasis added). The BCA defines "foreign corporation" as "a corporation for profit organized under laws other than the

---

[3] Section 7-1.2-1502 provides, in pertinent part:

> "(b) Any director, shareholder or holder of voting trust certificates for shares of a corporation, upon written demand stating the purpose for the demand, has the right to examine, in person, or by agent or attorney, at any reasonable time or times, for any proper purpose, its relevant books and records of account, minutes, and record of shareholders and to make extracts from those books and records of account, minutes, and record of shareholders.
> " * * *
> " * * *
> "(e) Upon the written request of any director, shareholder or holder of voting trust certificates for shares of a corporation, the corporation shall mail to the director, shareholder or holder of voting trust certificates its most recent financial statements showing in reasonable detail its assets and liabilities and the results of its operations."

laws of this state for a purpose or purposes for which a corporation may be organized under this chapter." Section 7-1.2-106(8).

"[W]hen the statutory language is clear and unambiguous, we give the words their plain and ordinary meaning." *Western Reserve Life Assurance Co. of Ohio v. ADM Associates, LLC*, 116 A.3d 794, 798 (R.I. 2015) (quoting *Hough v. McKiernan*, 108 A.3d 1030, 1035 (R.I. 2015)). We conclude that the provisions' use of the term "corporation"—not "foreign corporation"— reveals that it would be inapposite for §§ 7-1.2-701 and 7-1.2-1502 to apply to foreign corporations, because these provisions relate to internal affairs that Rhode Island does not have the authority to regulate. *See* § 7-1.2-1401(a). Accordingly, Rein is not entitled to relief under the BCA count, and we affirm the hearing justice's order granting defendants' motion to dismiss this count.

## B

## The WPA Count

We next turn to Rein's WPA count. On appeal, Rein maintains that the hearing justice erred in finding that Rein failed to assert a WPA claim premised on defendants' alleged BCA violations because ESS is not subject to the BCA. Specifically, Rein asserts that even if ESS is not subject to the BCA, the WPA count is nevertheless viable because the complaint alleged that defendants violated the common law by making false representations in the minutes of the December 11, 2014 meeting.[4] He also maintains that, under the WPA, he is not required to establish an actual violation of a law, only that he reasonably believed that a violation occurred; he maintains that the complaint demonstrates that he reasonably believed that defendants were subject to the BCA and violated it.

---

[4] Rein maintains that this conduct constitutes "fraud, intentional or negligent misrepresentation, deceit[.]"

The WPA, in pertinent part, prohibits an employer from discharging, threatening, or otherwise discriminating against an employee:

> "(3) Because an employee refuses to violate or assist in violating federal, state or local law, rule or regulation, or
>
> "(4) Because the employee reports verbally or in writing to the employer or to the employee's supervisor a violation, which the employee knows or reasonably believes has occurred or is about to occur, of a law or regulation or rule promulgated under the laws of this state, a political subdivision of this state, or the United States * * *." Section 28-50-3.

We share the opinion of the hearing justice that the complaint did not "artfully articulate" which law Rein alleged defendants had violated in support of his WPA claim. However, artistry aside, a motion to dismiss should be granted only "when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief from the defendant under any set of facts that could be proven in support of the plaintiff's claim." *Goddard*, 134 A.3d at 175 (quoting *Ho-Rath*, 115 A.3d at 942). Here, viewing the allegations pled in the complaint as true, this Court cannot conclude that Rein would not be entitled to relief under the WPA count. From our review of the four corners of the complaint, Rein sufficiently alleged that defendants violated the BCA by refusing to allow him to review ESS's records and by failing to conduct the shareholders meeting in accordance with the BCA. The complaint also adequately alleged that Rein "complain[ed] to his supervisors, including, but not limited to, [d]efendant Natale, of violations of state and/or municipal laws and/or regulations by the [d]efendants," and, as a result, "was terminated from his position on May 27, 2015."

Although we hold that defendants are not subject to the BCA, Rein maintains that for there to be a viable claim under the WPA, he need not prove that an actual violation of a law, such as the BCA, occurred, only that he reasonably believed that a violation occurred. *See* § 28-

- 11 -

50-3 (providing whistleblowers' protection to an employee who reports a violation, "which the employee knows or *reasonably believes* has occurred or is about to occur") (emphasis added). Assuming the facts contained in Rein's complaint to be true and viewing the facts in the light most favorable to Rein, *Goddard*, 134 A.3d at 175, his belief that defendants were subject to the BCA may be found by a factfinder to have been reasonable because ESS was authorized to conduct business in Rhode Island, ESS maintained its principal place of business in Rhode Island, and Natale and Rein worked in Rhode Island. Such a determination, however, is more appropriately assigned to a jury.

The defendants urge this Court to look to the complaint Rein had previously filed in Delaware as evidence of "Rein's knowledge that Delaware corporate law governed his relationship as a shareholder with ESS and that he had no reasonable belief concerning a violation of Rhode Island or federal law." The fact that, after consulting with counsel, Rein filed suit in Delaware does not necessarily lead to the conclusion that he did not reasonably believe that the defendants had violated Rhode Island law. Consequently, we conclude that Rein's complaint sufficiently pleads a WPA claim: Rein reasonably believed that the defendants violated the BCA, Rein complained to his supervisors of the alleged violations, and he was subsequently terminated, which Rein alleged was causally related to his whistleblowing conduct. For the above reasons, we reverse the decision of the hearing justice to dismiss the WPA count set forth in Rein's complaint.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the order in so far as it dismissed the BCA count of Rein's complaint, and we reverse the order in so far as it dismissed the WPA count. This case may be remanded to the Superior Court for further proceedings consistent with this opinion.

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Christopher G. Rein v. ESS Group, Inc., et al. |
| **Case Number** | No. 2017-272-Appeal. (PC 15-4645) |
| **Date Opinion Filed** | June 1, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Richard A. Licht |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Gina A. DiCenso, Esq.<br>V. Edward Formisano, Esq.<br>Michael D. Pushee, Esq.<br><br>For Defendants:<br><br>William R. Grimm, Esq.<br>Ryan M. Gainor, Esq. |