# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JUUL LABS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2020-0005-JTL |
| | ) | |
| DANIEL GROVE, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

Date Submitted: May 22, 2020
Date Decided: August 13, 2020

William M. Lafferty, David J. Teklits, Lauren N. Bennett, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Bruce A. Ericson, Colin T. Kemp, PILLSBURY WINTHROP SHAW PITTMAN LLP, San Francisco, California *Attorneys for Plaintiffs.*

Gregory V. Varallo, BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP, Wilmington, Delaware; David Wales, Thomas G. James, BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP, New York, NY; Francis A. Bottini, Jr. BOTTINI & BOTTINI, INC., La Jolla, California, *Attorneys for Defendant.*

**LASTER, V.C.**

Plaintiff JUUL Labs, Inc. (the "Company") is a privately held Delaware corporation with its principal place of business in San Francisco, California. Defendant Daniel Grove demanded to inspect books and records of the Company under Section 1601 of the California Corporations Code. *See* Cal. Corp. Code § 1601. That statute grants inspection rights to any stockholder in a corporation with its principal executive office in California, regardless of corporation's state of incorporation. Grove stated that he might sue in California state court to enforce his inspection rights.

The Company filed this action against Grove. The Company maintains that Grove waived his inspection rights under four agreements. To the extent that Grove did not waive all of his inspection rights, the Company maintains that Grove cannot seek inspection under California law because, as a stockholder, he only can possess inspection rights under Section 220 of the Delaware General Corporation Law (the "DGCL"). *See* 8 *Del. C.* § 220. The Company also maintains that this court has exclusive jurisdiction over any claim to enforce Grove's inspection rights under a forum-selection provision in the Company's certification of incorporation. The parties filed cross motions for judgment on the pleadings.

Grove is not contractually barred from invoking Section 1601. Two of the agreements in question only address Grove's ability to seek inspection under Section 220; they do not address other potential sources of inspection rights, such as Section 1601. Two other agreements made the contractual information rights in those agreements exclusive for a defined set of holders, but Grove is not one of those holders. As a result,

this court must determine whether he can rely on Section 1601 given the implications of the internal affairs doctrine.

The Company is a Delaware corporation. Under principles articulated by the Supreme Court of the United States and applied by the Delaware Supreme Court, Delaware law governs its internal affairs. The scope of Grove's inspection rights is a matter of internal affairs, so Delaware law applies. Grove therefore cannot rely on Section 1601 to obtain books and records. Because Grove's inspection rights implicate the Company's internal affairs, Grove must pursue any remedy in this court under the exclusive forum-selection provision in the Company's certificate of incorporation. Grove has not yet made a demand for inspection under Delaware law, and so this decision does not address whether he validly waived his inspection rights.

## I.  FACTUAL BACKGROUND

Grove is a former employee of the Company. During his employment, Grove received options to acquire 20,000 shares of common stock as part of his compensation. On August 4, 2017, Grove electronically signed a standard-form acceptance agreement in which he confirmed his acceptance of the options. *See* Compl. Ex. A (the "Acceptance Agreement"). Through the Acceptance Agreement, Grove agreed that his options (i) were governed by the terms of the Company's 2007 Stock Plan (the "Plan"),[1] (ii) had been

---

[1] The Acceptance Agreement incorporates the Plan by reference. A copy of the Plan appears in Exhibit A to the Complaint as an attachment to the Acceptance Agreement.

2

granted under the terms of standard-form Stock Option Agreement (the "Grant Agreement"),[2] and (iii) only could be exercised under the terms of a standard-form Stock Option Exercise Notice and Agreement (the "Exercise Agreement").[3] By electronically signing the Acceptance Agreement, Grove became bound by the Grant Agreement.

On February 1, 2018, Grove exercised options to acquire 5,000 shares of common stock in the Company. To exercise the options, Grove electronically signed the Exercise Agreement. Grove thus became bound by the Exercise Agreement.

Both the Grant Agreement and the Exercise Agreement contain substantively identical provisions that purport to waive inspection rights under Section 220 of the DGCL. The relevant language appears in the Legal Analysis, *infra*.

By executing the Exercise Agreement, Grove agreed that he became "subject to the terms and conditions set forth in . . . the Seventh Amended and Restated Investors' Rights Agreement, dated March 8, 2017 . . . ." Exercise Agr. at 2 ¶ 1; *see* Dkt. 41 Ex. 2 (the "Seventh Investor Agreement" or "7th Agr.").

---

[2] The Acceptance Agreement incorporates the Grant Agreement by reference. The Complaint does not provide a copy of the Grant Agreement as an attachment to the Acceptance Agreement. The Complaint attaches the Grant Agreement separately as Exhibit B.

[3] The Acceptance Agreement incorporates the Exercise Agreement by reference. The Complaint does not provide a copy of the Exercise Agreement as an attachment to the Acceptance Agreement. The Complaint attaches the Exercise Agreement separately as Exhibit C.

The Seventh Investor Agreement provides that it could be amended in accordance with its terms and that "[a]ny such amendment . . . shall be binding upon each Holder and each future holder of all such securities of Holder, regardless of whether any such Person has consented thereto." 7th Agr. § 5.1.

The Seventh Investor Agreement has been amended twice since Grove signed the Exercise Agreement in February 2018—once in June 2018 and again in December 2018. Dkt. 41 ¶ 21. The currently operative version is the Ninth Amended Investors' Rights Agreement. *Id.*; *see* Compl. Ex. D (the "Ninth Investor Agreement" or "9th Agr.").

Both the Seventh and Ninth Investor Agreements (jointly, the "Investor Agreements") contain waivers of inspection rights that purport to make the contractual information rights in those agreements the exclusive avenues for "Holders"—a defined term—to seek information. The operative language appears in the Legal Analysis, *infra.*

On December 27, 2019, Grove demanded to inspect the books and records of the Company under Section 1601. Grove indicated that if he did not receive a response or if the Company refused his demand, then he "may apply to the [California state court] for an order compelling inspection." Compl. Ex. E at 5.

On January 6, 2020, the Company filed this action. The Company asked this court to enter an order

> (i) declaring that Delaware law (not California law) governs Grove's rights (if any) to inspect [the Company's] books and records;

> (ii) declaring that Grove has waived his rights to seek inspection of [the Company's] books and records;

4

(iii) declaring that [the Company] is not obligated to make books and records available to Grove for inspection or otherwise; and

(iv) enjoining Grove from attempting to circumvent his agreement by purporting to pursue inspection rights under California law.

Compl. ¶ 5 (formatting added). The parties cross-moved for judgment on the pleadings.

Meanwhile, on January 7, 2020, Grove filed an action in the Superior Court of California for the County of San Francisco. In the California action, Grove seeks to inspect the Company's books and records under Section 1601.

## II.      LEGAL ANALYSIS

When ruling on a motion under Court of Chancery Rule 12(c) for judgment on the pleadings, "a trial court is required to view the facts pleaded and the inferences to be drawn from such facts in a light most favorable to the non-moving party." *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993) (footnote omitted). "A motion for judgment on the pleadings may be granted only when no material issue of fact exists and the movant is entitled to judgment as a matter of law." *Id.*

### A.      The Grant Agreement And The Exercise Agreement

The Company contends that under the Grant Agreement and the Exercise Agreement, Grove waived all rights to inspect books and records, not only under Section 220, but also under Section 1601. *See* Dkt. 19 at 15. That argument fails because the plain language of the waiver provisions only addresses Section 220.

"There can be no waiver of a statutory right unless that waiver is clearly and affirmatively expressed in the relevant document." *Kortum v. Webasto Sunroofs, Inc.*,

5

769 A.2d 113, 125 (Del. Ch. 2000). Titled "**WAIVER OF STATUTORY INFORMATION RIGHTS**," Section 16 of the Grant Agreement states,

> Optionee acknowledges and understands that, but for the waiver made herein, Optionee would be entitled, upon written demand under oath stating the purpose thereof, to inspect for any proper purpose, and to make copies and extracts from, the Company's stock ledger, a list of its stockholders, and its other books and records, and the books and records of subsidiaries of the Company, if any, under the circumstances and in the manner provided in Section 220 of the General Corporation Law of Delaware (any and all such rights, and any and all such other rights of Optionee as may be provided for in Section 220, the "Inspection Rights").

> In light of the foregoing, until the first sale of Common Stock of the Company to the general public pursuant to a registration statement filed with and declared effective by the Securities and Exchange Commission under the Securities Act of 1933, as amended, Optionee hereby unconditionally and irrevocably waives the Inspection Rights, whether such Inspection Rights would be exercised or pursued directly or indirectly pursuant to Section 220 or otherwise, and covenants and agrees never to directly or indirectly commence, voluntarily aid in any way, prosecute, assign, transfer, or cause to be commenced any claim, action, cause of action, or other proceeding to pursue or exercise the Inspection Rights.

> The foregoing waiver applies to the Inspection Rights of Optionee in Optionee's capacity as a stockholder and shall not affect any rights of a director, in his or her capacity as such, under Section 220. The foregoing waiver shall not apply to any contractual inspection rights of Optionee under any written agreement with the Company[.]

Grant Agr. § 16 (formatting added). The Grant Agreement defines "Optionee" as "the person named in the Notice of Stock Option Grant," i.e., Grove.

The Exercise Agreement contains an identical provision, albeit drafted so that the party exercising the option made statements in the first person. It states,

> I acknowledge and understand that, but for the waiver made herein, I would be entitled, upon written demand under oath stating the purpose thereof, to inspect for any proper purpose, and to make copies and extracts from, the Company's stock ledger, a list of its stockholders, and its other books and

6

records, and the books and records of subsidiaries of the Company, if any, under the circumstances and in the manner provided in Section 220 of the General Corporation Law of Delaware (any and all such rights, and any and all such other rights of mine as may be provided for in Section 220, the "Inspection Rights").

In light of the foregoing, until the first sale of Common Stock of the Company to the general public pursuant to a registration statement filed with and declared effective by the Securities and Exchange Commission under the Securities Act, I hereby unconditionally and irrevocably waive the Inspection Rights, whether such Inspection Rights would be exercised or pursued directly or indirectly pursuant to Section 220 or otherwise, and I covenant and agree never to directly or indirectly commence, voluntarily aid in any way, prosecute, assign, transfer, or cause to be commenced any claim, action, cause of action, or other proceeding to pursue or exercise the Inspection Rights.

Exercise Agr. at 4 ¶ 1 (formatting added).[4]

The plain language of these provisions defines the term "Inspection Rights" solely in terms of Section 220. Using the language of the Grant Agreement for purposes of illustration, the waiver provision first refers to any entitlement

upon written demand under oath stating the purpose thereof, to inspect for any proper purpose, and to make copies and extracts from, the Company's stock ledger, a list of its stockholders, and its other books and records, and the books and records of subsidiaries of the Company, if any, under the circumstances and in the manner provided in Section 220 of the General Corporation Law of Delaware[.]

Grant Agr. § 16. It then defines "any and all such rights, and any and all such other rights of Optionee as may be provided for in Section 220" as the "Inspection Rights." *Id.* The

---

[4] The Exercise Agreement lacks separately enumerated subheadings and consequently contains numerous provisions with the same paragraph number. The waiver provision appears in paragraph 1 under an unnumbered heading titled "MISCELLANEOUS."

7

waiver provisions thus frame the scope of the Inspection Rights by referring exclusively to rights "as may be provided for in Section 220," and they use language that paraphrases the scope of Section 220(b). *See* 8 *Del. C.* § 220(b) (providing that "[a]ny stockholder, . . . upon written demand under oath stating the purpose thereof, . . . [may] inspect for any proper purpose, and [may] make copies and extracts from: (1) The corporation's stock ledger, a list of its stockholders, and its other books and records; and (2) A subsidiary's books and records . . . ."). By their plain terms, the waiver provisions do not extend beyond Section 220 and do not reach other informational rights, such as Section 1601.

The Company argues that the waiver provisions reach Section 1601 because the provisions state that the Optionee "unconditionally and irrevocably waives the Inspection Rights, whether such Inspection Rights would be exercised or pursued directly or indirectly pursuant to Section 220 or otherwise . . . ." The Company maintains that "or otherwise" necessarily encompasses all other sources of inspection rights. But the phrase "or otherwise" does not expand the definition of Inspection Rights. It addresses the methods by which Grove might exercise or pursue his Inspection Rights, *i.e.*, "whether such Inspection Rights would be exercised or pursued directly or indirectly pursuant to Section 220 or otherwise . . . ." Grant Agr. § 16; *accord* Exercise Agr. at 4 ¶ 1. The Company could have defined the term "Inspection Rights" more broadly. It cannot now interpret "or otherwise" to expand that definition. *See Sullivan Money Mgmt., Inc. v. FLS Hldgs. Inc.*, 1992 WL 345453, at *5 (Del. Ch. Nov. 20, 1992) (rejecting broad interpretation of "or otherwise" that would expand a party's rights under agreement), *aff'd*, 628 A.2d 84 (Del. 1993) (ORDER).

8

At most, the phase "or otherwise" might make the scope of the waiver provision ambiguous. In that case, the waiver still would be ineffective because it would not be expressed clearly and affirmatively, which is the standard for waiver of a statutory right. The doctrine of *contra proferentem* also would come into play and require that the provision be construed against the Company as the unilateral drafter of the agreements. *See Norton v. K-Sea Transp. P'rs L.P.*, 67 A.3d 354, 360 (Del. 2013). As the "the entity in control of the process of articulating the terms" of the Exercise Agreement and Grant Agreement, it was "incumbent upon the [Company] to make [their] terms clear." *SI Mgmt. L.P. v. Wininger*, 707 A.2d 37, 42 (Del. 1998) (quoting *Penn Mutual Life Ins. Co. v. Oglesby*, 695 A.2d 1146, 1149–50 (Del. 1997)).[5]

The waiver provisions in the Grant Agreement and the Exercise Agreement only address inspection rights under Section 220. They do not extend to other potential sources of information rights, such as Section 1601.[6]

---

[5] The same principles apply to the implications of the final sentence of the waiver provision in the Grant Agreement, which states that "[t]he foregoing waiver shall not apply to any contractual inspection rights of Optionee under any written agreement with the Company." Grant Agr. § 16. Because the provision defines Inspection Rights only in terms of rights under Section 220, it was not strictly necessary to include this clarifying language. The preservation of contractual inspection rights thus implies that the waiver was intended to sweep more broadly. At most, the clarifying language creates ambiguity, and an ambiguous provision is not sufficient to waive Grove's rights.

[6] For simplicity, this decision analyzes the parallel waiver provisions in the Grant Agreement and the Exercise Agreement under Delaware law. The Exercise Agreement specifies that it is governed by Delaware law. *See* Exercise Agr. at 5 ¶ 3. The Grant Agreement, however, states that it is governed by California law. Grant Agr. § 14(e). The standard for establishing waiver of a statutory right under California law appears to be

## B.     The Investor Agreements

The Company next contends that the waiver provisions in the Investor Agreements waived all of Grove's inspection rights. *See* Dkt. 19 at 15. Although the waiver provisions in the Investor Agreements sweep broadly to address all extra-contractual sources of inspection rights, they do not apply to Grove.

A threshold issue exists as to whether Grove is bound by the Investor Agreements. In the Exercise Agreement, Grove "represent[ed] to the Company" that he "ha[d] received and read a copy of each of the Stockholders Agreements" and that he "had the opportunity to ask question[s] and receive answers from the Company regarding the terms and conditions set forth in each of the Stockholders Agreements." Exercise Agr. at 3 ¶ 5. To the best of the parties' knowledge, however, Grove did not receive a copy of the Investor Agreements. Dkt. 41 ¶ 9. Grove represented that he searched his two computers, his email accounts, and a website application that the Company uses to manage option exercises and the resulting shares. He could not locate any version of the Investor Agreements. *Id.* ¶ 36. According to Grove, the Investor Agreements were not "available for download" on the website when he electronically signed the Exercise Agreement. *Id.* ¶ 36 & n.1.

---

more onerous than under Delaware law, and so the result would be the same. *See In re Miller*, 253 B.R. 455, 459 (Bankr. N.D. Cal. 2000) ("California courts have held that a contract providing for the waiver of a statutory right will be enforced only if the waiver language is so clear that the intention to waive the right is unmistakable."), *aff'd*, 284 B.R. 121 (N.D. Cal. 2002)*, aff'd sub nom. Miller v. United States*, 363 F.3d 999 (9th Cir. 2004).

10

Assuming for purposes of analysis that Grove received these agreements and is bound by them, the waiver provisions sweep broadly enough to encompass Section 1601. The operative language states:

> WAIVER OF SECTION 220 OF THE DGCL. EACH HOLDER, EXPRESSLY, IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO INSPECT THE COMPANY'S BOOKS AND RECORDS PURSUANT TO SECTION 220 OF THE GENERAL CORPORATION LAW OF THE STATE OF DELAWARE. EACH HOLDER ACKNOWLEDGES AND AGREES THAT THE RIGHTS SET FORTH IN THIS SECTION 3 SHALL BE THE SOLE AND EXCLUSIVE RIGHTS TO ACCESS, AND INSPECT, THE COMPANY'S BOOKS AND RECORDS.

7th Agr. § 3.5 (emphasis in original); *accord* 9th Agr. § 3.5 (emphasis in original).

Although the first sentence in the waiver provision speaks only in terms of inspection rights under Section 220, the second sentence has broader effect. The second sentence makes the contractual information rights in the Investor Agreements the sole and exclusive method of accessing the Company's books and records. The second sentence thus purports to eliminate all rights to inspection other than the contractual information rights that are provided in the Investor Agreements.

For present purposes, the broader effect of the waiver provisions is not enough to limit Grove's ability to invoke Section 1601 because the waiver provisions do not apply to Grove. By their terms, the waiver provisions apply only to "Holders," which the Investor Agreements define as

> (i) any Investor who holds Registrable Securities, (ii) solely for purposes of Section 2 (other than Section 2.13) and Section 5 (other than Sections 5.1 and 5.4), Altria Sub, for so long as Altria Sub holds Registrable Securities, and (iii) any holder of Registrable Securities to whom the registration rights

11

conferred by this Agreement have been duly and validly transferred in accordance with Section 2.13.

9th Agr. § 1.1(y); *accord* 7th Agr. § 1.1(y). Subpart (ii) is inapplicable because Grove is not "Altria Sub," which refers to Altria Enterprises, LLC. *See id.* at pmbl. Subpart (iii) is inapplicable because Grove does not possess registration rights. This leaves subpart (i), which only applies to "any Investor who holds Registrable Securities." The Investor Agreements define "Investors" to mean "the holders of the Shares listed on Exhibit A hereto." 9th Agr. § 1.1(dd); *accord* 7th Agr. § 1.1(dd). Grove's name does not appear on Exhibit A. *See* 7th Agr. Ex. A; 9th Agr. Ex. A. Accordingly, even if Grove is bound by the Investors Agreements, he is not a "Holder" and thus is not bound by the waiver provisions.

The waiver provisions in the Investor Agreements do not apply to Grove. They do not foreclose him from invoking Section 1601.

## C.     The Internal Affairs Doctrine

The Company finally argues that even if Grove did not waive his right to an inspection under Section 1601, he cannot pursue an inspection under that statute because of the internal affairs doctrine. Dkt. 19 at 18. Under the internal affairs doctrine as articulated by the Supreme Court of the United States and the Delaware Supreme Court, only Delaware law applies.[7]

---

[7] When briefing this issue, the parties relied on a handful of decisions from Delaware and California. A wider focus reveals that questions about the extent to which a court in a non-chartering jurisdiction can adjudicate a claim to inspect the books and

records of a foreign corporation, including the question of which law applies, have arisen frequently in the annals of corporate law. The authorities hale from a range of jurisdictions, were decided during various eras, and reflect evolving and often competing theories of the corporation. Not surprisingly, they reach conflicting outcomes. This decision acknowledges that as a result, a substantial volume of authority posits that the internal affairs doctrine should *not* limit the ability of a non-chartering jurisdiction to grant rights to inspect the books and records of a foreign corporation. *See, e.g.*, 36 Am. Jur. 2d *Foreign Corporations* § 58, Westlaw (database updated Aug. 2020) ("Despite a foreign corporation's incorporation in another state, the right of shareholders or other interested parties to inspect the corporation's books and records is governed by the laws of the state in which the corporation does business, not the law of the state of its incorporation."); *id.* § 377 ("When a foreign corporation is licensed to do business in the forum state, and has its office and records in the forum state, the law of the forum state regarding the inspection of records rather than the law of the state of incorporation applies. Under other authority, a local court will follow the law of the foreign corporation's domicil[e] regarding the right of a shareholder to inspect the corporation's records unless a local statute defines the rights of inspection of stockholders of all corporations doing business in the state. In any event, a foreign corporation authorized to do business in a state may be subject to that state's statutory provisions respecting access to corporate books and records at least when nothing in the language of a statute or underlying policy considerations indicate an intention to limit the statute's effect to domestic corporations. Consequently, shareholders are entitled to inspection of the records of a foreign corporation under a statute that provides that foreign corporations enjoy the same privileges as domestic corporations and requires that each corporation keep a record of shareholders at a registered office or the office of its transfer agent for inspection.") (footnotes omitted); Deborah A. DeMott, *Shareholder Derivative Actions: Law and Practice* § 2:13(1) (2019–20) (collecting "inspection cases" involving the "application of forum-state law" to a foreign corporation); K. M. Potraker, Annotation, *Stockholder's Right to Inspect Books and Records of Foreign Corporation*, 19 A.L.R.3d 869 (1968) (collecting cases); *see also* Elvin R. Latty, *Pseudo-Foreign Corporations*, 65 Yale L.J. 137, 138–39 (1955) ("Legislation relating to corporations not infrequently contains protective provisions that the parties to be protected cannot 'waive' by contract in drafting the charter. For example, a court would surely not uphold a charter clause to the effect that no shareholders can inspect those books and records that the law otherwise entitles them to inspect. It is not logical that local law be automatically excluded simply because parties have, by selecting the place of incorporation, exercised freedom of contract on a matter that local law does not leave completely to freedom of contract." (footnote omitted)).

The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands.

*Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) (citing *Restatement (Second) of Conflict of Laws* § 302 cmt. b. (1971)). "Corporations are creatures of state law, and investors commit their funds to corporate directors on the understanding that, except where federal law expressly requires certain responsibilities of directors with respect to stockholders, state law will govern the internal affairs of the corporation." *Cort v. Ash*, 422 U.S. 66, 84 (1975), *abrogated on other grounds by Act Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 15 (1979). "No principle of corporation law and practice is more

---

This decision does not parse through the competing authorities. Providing a fair summary would require tracing the development of the internal affairs doctrine from its origins as a limitation on the authority of a non-chartering jurisdiction, to a discretionary abstention doctrine, to its contemporary manifestation as a choice-of-law principle. A deeper analysis would compare that evolution with related developments in corporate theory and track the extent to which those theoretical developments reflect the underlying structure of state corporate law. For example, it has seemed to me that notwithstanding scholarly approaches such as the widely embraced view of the corporation as a nexus of contracts (which I too regard as a helpful metaphor), the DGCL rests on a concept of the corporation that is grounded in a sovereign exercise of state authority: the chartering of a "body corporate" that comes into existence on the date on which a certificate of incorporation becomes effective. 8 *Del. C.* § 106. That concept of the corporation (and of state-chartered entities more generally) can have implications for the valid exercise of one state's power in relation to other states, whether through action by the state itself or as a result of private parties exercising state power by proxy by inserting terms in the entity's governing documents. As I see it, choice of law is one dimension of that larger inquiry.

firmly established than a State's authority to regulate domestic corporations . . . ." *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 89 (1987).

"[T]he internal affairs doctrine raises important Constitutional concerns—namely, under the Fourteenth Amendment Due Process Clause, the Full Faith and Credit Clause, and the Commerce Clause." *Salzberg v. Sciabacucchi*, 227 A.3d 102, 136 (Del. 2020). The Due Process Clause of the Fourteenth Amendment is implicated by the need for directors and officers "to know what law will be applied to their actions" and by the stockholders' "right to know by what standards of accountability they may hold those managing the corporation's business and affairs." *McDermott Inc. v. Lewis*, 531 A.2d 206, 216–17 (Del. 1987). The Full Faith and Credit Clause "commands application of the internal affairs doctrine except in the *rare* circumstance where national policy is outweighed by a significant interest of the forum state in the corporation and its shareholders." *Id.* at 218 (emphasis in original) (footnote omitted). Under the Commerce Clause, a non-chartering state "'has no interest in regulating the internal affairs of foreign corporations.'" *Id.* at 217 (quoting *MITE*, 457 U.S. at 645–46); *accord Citigroup Inc. v. AHW Inv. P'ship*, 140 A.3d 1125, 1134 (Del. 2016) (explaining that when a claim implicates the internal affairs of a corporation, then "under the Commerce Clause and the Full Faith and Credit Clause, Delaware law would apply to the merits" (footnotes omitted)).

"The internal affairs doctrine applies to those matters that pertain to the relationships among or between the corporation and its officers, directors, and shareholders." *VantagePoint Venture P'rs 1996 v. Examen, Inc.*, 871 A.2d 1108, 1113

15

(Del. 2005). "The doctrine requires that the law of the state . . . of incorporation must govern those relationships." *Sagarra Inversiones, S.L. v. Cementos Portland Valderrivas, S.A.*, 34 A.3d 1074, 1082 (Del. 2011). Consequently, the "practice of both state and federal courts has consistently been to apply the law of the state of incorporation to the entire gamut of internal corporate affairs." *VantagePoint*, 871 A.2d at 1113 (internal quotation marks omitted). "The internal affairs doctrine," however, "does not apply where the rights of third parties external to the corporation are at issue, e.g., contracts and torts." *Id.* at 1113 n.14.

Stockholder inspection rights are a core matter of internal corporate affairs. In *Salzberg*, the Delaware Supreme Court constructed a Venn diagram depicting the extent to which issues potentially implicate internal affairs. 227 A.3d at 131. Within that Venn diagram, stockholder inspection rights occupy the innermost circle.[8] Underscoring the

---

[8] *Id.*; *accord* George S. Geis, *Information Litigation in Corporate Law*, 71 Ala. L. Rev. 407, 448 (2019) ("Inspection rights clearly relate to the internal affairs of the corporation . . . ."); P. John Kozyris, *Corporate Wars and Choice of Law*, 1985 Duke L.J. 1, 63 (stating that "[c]ertain internal affairs matters are even less amenable to differential treatment than others" and that "[t]he hard core areas where 'indivisible unity' is paramount should include first and foremost the rights that attach to corporate shares" like "obtaining information" and "inspecting corporate records"); Deborah A. DeMott, *Perspectives on Choice of Law for Corporate Internal Affairs*, 48 L. & Contemp. Probs. 161, 168 (1985) [hereinafter DeMott, *Perspectives on Choice of Law*] (describing "shareholders' inspection rights" as one of the "quintessentially internal matters"); *see Restatement (Second) of Conflict of Laws* § 304 (concluding that the law of the state of incorporation generally should "determine the right of a shareholder to participate in the administration of the affairs of the corporation"); 17 William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Private Corporations* § 8434 (Sept. 2019 update) ("It has been held that shareholder meetings and maintenance of books and records were 'internal affairs' of the corporation not subject to regulation in another state.").

centrality of stockholder inspection rights, the Delaware Supreme Court has described the ability of stockholders to access books and records as "an important part of the corporate governance landscape." *Seinfeld v. Verizon Commc'ns, Inc.*, 909 A.2d 117, 120 (Del. 2006) (internal quotation marks omitted). Through its Section 220 jurisprudence, the Delaware Supreme Court seeks to maintain "an appropriate balance" between the interests of stockholders to obtain information and the right of the corporation to deny unwarranted and burdensome requests. *Id.* at 118. The numerous Delaware decisions that address Section 220 rights demonstrate the significance of this subject as a matter of the internal affairs of Delaware corporations.[9]

An important public policy served by the internal affairs doctrine is to ensure the uniform treatment of directors, officers, and stockholders across jurisdictions. "Uniform treatment of directors, officers and shareholders is an important objective which can only be attained by having the rights and liabilities of those persons with respect to the

---

[9] *See* James D. Cox, et al., *The Paradox of Delaware's "Tools at Hand" Doctrine: An Empirical Investigation*, 75 Bus. Law. 2123 (2020) (quantifying and tracing increase in the volume of books and records litigation). At least one California decision, *Valtz v. Penta Inv. Corp.*, 188 Cal. Rptr. 922 (Ct. App. 1983), rejected the argument that Section 1600 involves the internal affairs of a Delaware corporation. The analysis in *Valtz* conflicts with applicable precedents from the Supreme Court of the United States and the Delaware Supreme Court. Since *Valtz*, the Delaware Supreme Court has issued its decisions in *Sciabacucchi*, *VantagePoint*, and *McDermott*. In light of these decisions, *Valtz* is unpersuasive. *See also Voss v. Sutardja*, 2015 WL 349444, at *9 n.6 (N.D. Cal. Jan. 26, 2015) (questing the precedential value of *Valtz*); John W. Edwards II, *Busy Bees and Busybodies: The Extraterritorial Reach of California Corporate Law*, 11 U.C. Davis Bus. L.J. 1, 31 (2010) (describing the interpretation of the internal affairs doctrine in *Valtz* as "not simply novel; it is contrary to any rational application of the doctrine").

corporation governed by a single law." *Restatement (Second) of Conflict of Laws* § 302, cmt. e. "A State has an interest in promoting stable relationships among parties involved in the corporations it charters, as well as in ensuring that investors in such corporations have an effective voice in corporate affairs." *CTS Corp.*, 481 U.S. at 91. Having the law of the state of incorporation govern a corporation's internal affairs "prevent[s] corporations from being subjected to inconsistent legal standards" and "provide[s] certainty and predictability," thus "protect[ing] the justified expectations of the parties with interests in the corporation." *VantagePoint*, 871 A.2d at 1112–13.

Section 1601 is part of a suite of provisions in the California Corporations Code addressing information rights. Those provisions balance the relative interests of stockholders and the corporation differently than Section 220.

The core stockholder-inspection provision in the California regime appears in Section 1601(a) and states,

> The accounting books and records and minutes of proceedings of the shareholders and the board and committees of the board of any domestic corporation, *and of any foreign corporation keeping any such records in this state or having its principal executive office in this state*, shall be open to inspection upon the written demand on the corporation of any shareholder or holder of a voting trust certificate at any reasonable time during usual business hours, for a purpose reasonably related to such holder s interests as a shareholder or as the holder of such voting trust certificate. The right of inspection created by this subdivision shall extend to the records of each subsidiary of a corporation subject to this subdivision.

Cal. Corp. Code § 1601(a) (emphasis added). Although this provision generally resembles the right to inspect books and records granted by Section 220 of the DGCL, it differs in subtle ways. Most notably, the right to inspect "the records of each subsidiary"

18

is broader than Section 220(b), which establishes a more limited right of access to a subsidiary's books and records. *See* 8 *Del. C.* § 220(b)(2). It also seems likely that there could be differences in judicial interpretation, although the parties have not highlighted them.

Related provisions address other aspects of California's information-rights regime. Section 1600 gives any stockholder holding at least 5% in the aggregate of the outstanding voting stock of a corporation or who holds at least 1% and has filed a proxy statement

> *an absolute right* to do either or both of the following: (1) inspect and copy the record of shareholders' names and addresses and shareholdings during usual business hours upon five business days' prior written demand upon the corporation, or (2) obtain from the transfer agent for the corporation, upon written demand and upon the tender of its usual charges for such a list (the amount of which charges shall be stated to the shareholder by the transfer agent upon request), a list of the shareholders' names and addresses, who are entitled to vote for the election of directors, and their shareholdings, as of the most recent record date for which it has been compiled or as of a date specified. . . . A corporation shall have the responsibility to cause its transfer agent to comply with this subdivision.

Cal. Corp. Code § 1600(a) (emphasis added). That section likewise "applies to any domestic corporation and to any foreign corporation having its principal executive office in this state or customarily holding meetings of its board in this state." *Id.* § 1600(d). Although the provision generally resembles the right to a stock list under Section 220 of the DGCL, a stockholder under Section 220(c)(3) is only *presumed* to have a proper purpose for obtaining a stock list, which shifts the burden to the corporation to show that the stockholder has an improper purpose. *See* 8 *Del. C.* § 220(c)(3). Under the California statute, the ability to access a stock list is an "absolute right." Cal. Corp. Code § 1600(a).

19

Section 1602 vests directors with "the absolute right at any reasonable time to inspect and copy all books, records and documents of every kind and to inspect the physical properties of the corporation of which such person is a director and also of its subsidiary corporations, domestic or foreign." Cal. Corp. Code § 1602. The inspection "may be made in person or by agent or attorney and the right of inspection includes the right to copy and make extracts." *Id.* The right "applies to a director of any foreign corporation having its principal executive office in this state or customarily holding meetings of its board in this state." *Id.* These provisions generally track a director's right to information under Section 220(d) and the common law interpreting it. Under Delaware law, however, a director's right to information is broad, but not absolute; a corporation can defeat the director's inspection right by showing that the director has an improper purpose. *See King v. DAG SPE Managing Member, Inc.*, 2013 WL 6870348, at *5 (Del. Ch. Dec. 23, 2013).

Sections 1603 and 1604 establish an enforcement regime. Section 1603(a) provides that a California state court in the proper county may

> enforce the right of inspection with just and proper conditions or may, for good cause shown, appoint one or more competent inspectors or accountants to audit the books and records kept in this state and investigate the property, funds and affairs of any domestic corporation or any foreign corporation keeping records in this state and of any subsidiary corporation thereof, domestic or foreign, keeping records in this state and to report thereon in such manner as the court may direct.

Cal. Corp. Code § 1603(a). Under the California statute, "[a]ll expenses of the investigation or audit shall be defrayed by the applicant unless the court orders them to be paid or shared by the corporation." *Id.* § 1603(c). The court may award legal fees and

20

expenses to the applicant if the corporation's failure to comply with a proper demand was not substantially justified. *Id.* § 1604. Section 220 does not contain similar provisions, although this court has appointed receivers to enforce orders granting inspection rights.[10] To obtain fee shifting under Delaware law, a stockholder must successfully invoke the bad faith exception to the American rule.[11]

Generally speaking, the California inspection regime is not radically different from the Delaware regime, but it is not the same either. California's balancing of the competing interests between stockholders and the corporation differs from Delaware's. And California is not alone in granting rights to access the books and records of foreign corporations that do business in the state.[12] If other states could define the terms by which

---

[10] *See, e.g.*, *Deutsch v. ZST Digit. Networks, Inc.*, 2018 WL 3005822, at *1 (Del. Ch. June 14, 2018); *Seiden v. Kaneko*, 2015 WL 7289338, at *4 (Del. Ch. Nov. 3, 2015).

[11] *See Donnelly v. Keryx Biopharmaceuticals, Inc.,* 2019 WL 5446015, at *6 (Del. Ch. Oct. 24, 2019) ("Delaware follows the American rule on fees and costs, and in a Section 220 action, each party bears its own attorney's fees unless there is an exception to that rule."); *Ravenswood Inv. Co., L.P. v. Winmill & Co. Inc.*, 2014 WL 2445776, at *4 (Del. Ch. May 30, 2014) ("As a court of equity, however, this Court may require one party to pay another's attorneys' fees, for example, upon a showing of bad faith conduct during the litigation process."); *Technicorp Int'l II, Inc. v. Johnston*, 2000 WL 713750, at *44 (Del. Ch. May 31, 2000) (awarding fees in a Section 220 action after concluding that "there was no 'good faith' dispute about the merits of the claim").

[12] *See* Deborah A. DeMott, *Shareholder Derivative Actions: Law and Practice* § 3:7 n.2 (2019–20) ("Some states' statutory inspection rights apply to foreign corporations as well as domestic corporations, typically when the foreign corporation is doing business in the state." (collecting cases)); *id.* § 2.13(1) (collecting "inspection cases" involving the "application of forum-state law" to a foreign corporation); K. M. Potraker, Annotation, *Stockholder's Right to Inspect Books and Records of Foreign Corporation*, 19 A.L.R.3d

21

stockholders can inspect books and records, then a Delaware corporation could be subjected to different provisions and standards in jurisdictions around the country.

Under constitutional principles outlined by the Supreme Court of the United States and under Delaware Supreme Court precedent, stockholder inspection rights are a matter of internal affairs. Grove's rights as a stockholder are governed by Delaware law, not by California law. Grove therefore cannot seek an inspection under Section 1601.

## D. The Exclusive Forum Provision

The Company maintains that because Grove only possesses inspection rights under Delaware law, he must pursue his rights in a Delaware court. The Company's Amended and Restated Certificate of Incorporation provides for the exclusive jurisdiction of this court for any action governed by the internal affairs doctrine. The operative provision states,

> Unless the Corporation consents in writing to the selection of an alternative forum, the Court of Chancery in the State of Delaware shall be the sole and exclusive forum for any stockholder (including a beneficial owner) to bring
>
> (i) any derivative action or proceeding brought on behalf of the Corporation,
>
> (ii) any action asserting a claim of breach of fiduciary duty owed by any director, officer or other employee of the Corporation to the Corporation or the Corporation's stockholders,
>
> (iii) any action asserting a claim against the Corporation, its directors, officers, employees or stockholders arising pursuant to any provision of the DGCL or this Certificate of Incorporation or the Bylaws or

---

869 (1968 & Supp.) (collecting cases); *see, e.g.*, NY Bus. Corp. Law § 1315 (granting right of inspection to stockholders of foreign corporation who are New York residents).

(iv) any action asserting a claim against the Corporation, its directors, officers, employees or stockholders governed by the internal affairs doctrine.

If any action, the subject matter of which is within the scope of (i) through (iv) above, is filed in a court other than the Court of Chancery (a "Foreign Action") in the name of any stockholder, such stockholder shall be deemed to have consented to

(i) the personal jurisdiction of the Court of Chancery in the State of Delaware in connection with any action brought in such court to enforce this Article XII (an "Enforcement Action") and

(ii) having service of process made upon such stockholder in any such Enforcement Action by service upon such stockholder's counsel in the Foreign Action as agent for such stockholder. . . .

Any person or entity purchasing or otherwise acquiring or holding any interest in shares of capital stock of the Corporation shall be deemed to have notice of and consented to the provisions of this Article XII.

Dkt. 20 Ex. 1 at 36 (formatting added).

An action against the Company to inspect books and records falls within the plain meaning of this provision. It is an action "asserting a claim against the Corporation . . . arising pursuant to [a] provision of the DGCL." *Id.* It also is an "action asserting a claim against the Corporation . . . governed by the internal affairs doctrine." *Id.* It therefore is an action that must be pursued in this court.[13]

---

[13] *Boilermakers Local 145 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 963 (Del. Ch. 2013). Absent the exclusive forum-selection clause, nothing would prevent a California state court from hearing Grove's claim to inspect books and records under Delaware law. A hoary Delaware decision once entertained a petition to inspect the books and records of a Connecticut corporation. *See Richardson v. Swift*, 30 A. 781 (Del. Super. 1885). And this court has held that statutes conferring exclusive jurisdiction on the Delaware Court of Chancery as a matter of the internal allocation of authority within the

23

## E. The Issue Not Reached

This decision does not address whether a stockholder can waive inspection rights under Delaware law. Historically, Delaware decisions have rejected efforts by corporations to limit or eliminate inspection rights.[14] But there are strong countervailing considerations, including Delaware's broad recognition of parties' ability to waive other important rights, whether constitutional or statutory.[15] The decisions that have invalidated

---

Delaware court system do not (and cannot) exclude non-Delaware courts from hearing cases implicating those statues. *See In re Daniel Kloiber Dynasty Trust*, 98 A.3d 924, 938–40 (Del. Ch. 2014); *see also Stern v. South Chester Tube*, 390 U.S. 606, 609–10 (1968) (holding that federal court could exercise diversity jurisdiction over stockholder's claim to inspect books and records); *cf. Restatement (Second) of Conflict of Laws* § 313 ("[A] court will usually entertain an action by a shareholder to compel the officers of a foreign corporation to allow him to inspect such of its books or properties as are within the state.").

[14] *See State v. Penn-Beaver Oil Co.*, 143 A. 257, 260 (Del. 1926) ("[T]he provision in defendant's charter which permits the directors to deny any examination of the company's records by a stockholder is unauthorized and ineffective."); *Marmon v. Arbinet-Thexchange, Inc.*, 2004 WL 936512, at *5 (Del. Ch. Apr. 28, 2004) ("Nor could they rely upon a certificate provision prohibiting disclosure to avoid a shareholder's inspection right conferred by statute."); *BBC Acq. Corp. v. Durr-Fillauer Med., Inc.*, 623 A.2d 85, 90 (Del. Ch. 1992) (holding that a contract with a third party could not be used to limit inspection rights, which "cannot be abridged or abrogated by an act of the corporation"); *Loew's Theaters, Inc. v. Commercial Credit Co.*, 243 A.2d 78, 81 (Del. Ch. 1968) (holding that charter provision which limited inspection rights to holder of 25% of shares was void as conflicting with statute); *State ex rel. Healy v. Superior Oil Corp.*, 13 A.2d 453, 454 (Del. Super. Ct. 1940) ("In Delaware it has been considered that the right of a stockholder to examine the books of the company is a common law right and can only be taken away by statutory enactment."); *State v. Loft, Inc.*, 156 A. 170, 173 (Del. Ch. 1931) (following *Penn-Beaver*).

[15] *See Baio v. Commercial Union Ins. Co.*, 410 A.2d 502, 508 (Del. 1979) ("Clearly, our legal system permits one to waive even a constitutional right . . . and, a fortiori, one may waive a statutory right.") (citations omitted); *see, e.g., Graham v. State*

24

restrictions on inspection rights have addressed provisions in the corporation's constitutive documents, and there are arguments for distinguishing between provisions that appear in those documents and waivers in private agreements.[16]

---

*Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 913 (Del. 1989) (holding that an arbitration clause in a contract effectuated a valid waiver of the constitutional right to a jury trial); *Manti Hldg., LLC v. Authentix Acq. Co.*, 2019 WL 3814453, at *4 (Del. Ch. Aug. 14, 2019) (concluding "that waiver of appraisal rights is permitted under Delaware law, as long as the relevant contractual provisions are clear and unambiguous"); *Tang Capital P'rs, LP v. Norton*, 2012 WL 3072347, at *7 (Del. Ch. July 27, 2012) (holding that the plaintiff contractually waived its rights to seek a receivership under Section 291 of the DGCL); *Libeau v. Fox*, 880 A.2d 1049, 1056 (Del. Ch. 2005) (holding that the plaintiff waived her right to statutory partition by contract, noting that "[b]ecause it is a statutory default provision, it is unsurprising that the absolute right to partition might be relinquished by contract, just as the right to invoke § 273 to end a joint venture or to seek liquidation may be waived in the corporate context"); *Red Clay Educ. Ass'n v. Bd. of Educ. of Red Clay Consol. Sch. Dist.*, 1992 WL 14965, at *6 (Del. Ch. Jan. 16, 1992) (holding that a provision in a collective bargaining agreement constituted an effective waiver of negotiation right under unfair labor practices statute). The *Kortum* decision, cited above, held that a bilateral agreement had not waived statutory inspection rights where the waiver was not "clearly and affirmatively" expressed. *See Kortum*, 769 A.2d at 125; *accord Schoon v. Troy Corp.*, 2006 WL 1851481, at *2 (Del. Ch. June 27, 2006). Perhaps even a clear and express waiver would be contrary to public policy under *Penn-Beaver* and its progeny, but the standard set forth in *Kortum*, at minimum, implies that a stockholders' agreement could waive statutory inspection rights if the waiver was sufficiently clear.

[16] Spurred by recent decisions involving unilaterally adopted exclusive-forum bylaws, fee-shifting bylaws, and other provisions in an entity's constitutive documents, scholars have distinguished between the efficacy of the implied consent regime underlying these provisions and an actual consent regime involving bilateral agreements or provisions that receive stockholder approval. *See, e.g.*, Jill E. Fisch, *Governance by Contract: The Implications for Corporate Bylaws*, 106 Cal. L. Rev. 373, 380, 409 (2018) (describing the contractarian approach to charters and bylaws as "a powerful endorsement of contractual freedom in corporate law" while questioning whether Delaware decisions "may stretch the contract analogy too far"); Verity Winship, *Shareholder Litigation by Contract*, 96 B.U. L. Rev. 485, 495–96 (2016) (noting that "[h]ow closely . . . corporate organizational documents approach robust ideas of consent

At present, Grove has not attempted to demand books and records under Delaware law, and the parties have not briefed the relevant authorities. This decision therefore does not address this issue.

## III.    CONCLUSION

Grove did not waive his right to seek an inspection of books and records under California law. Under the internal affairs doctrine, however, Grove does not have the right to seek an inspection of books and records under California law. That right exists only under Delaware law. Under the Company's certificate of incorporation, any action to enforce that right must be brought in this court. The Company's motion for judgment

---

depends on the type of document and when a particular provision is adopted" (footnote omitted); contrasting "changes to existing charters," which "approach traditional notions of contractual consent because shareholder approval is required," with the adoption of pre-IPO charter provisions and bylaws, which "may be adopted without shareholder approval"); Lawrence A. Hamermesh, *Consent in Corporate Law*, 70 Bus. Law. 161, 164–65 (2015) (endorsing the contractarian approach to charters and bylaws while acknowledging that it deprives stockholders of the "personal privilege of forum choice, through no direct, specific consent of [their] own"); Browning Jeffries, *The Plaintiffs' Lawyer's Transaction Tax: The New Cost of Doing Business in Public Company Deals*, 11 Berkeley Bus. L.J. 55, 95–98 (2014) (noting that although "corporate bylaws and charters have frequently been analogized to contracts," "the analogy to a contractual relationship weakens" in light of the fact that "the bylaws can be adopted or amended unilaterally by the board without shareholder consent"). Along similar lines, the Model Business Corporation Act bars waivers in the constitutive documents of the corporation, but is silent on the viability of waivers in other agreements. *See* Model Bus. Corp. Act § 16.02(f) (2016) ("The right of inspection granted by this section may not be abolished or limited by a corporation's articles of incorporation or bylaws."). That said, the take-it-or-leave-it nature of the agreements in this case may need to be considered. *Cf. Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 912 (Del. 1989) ("A contract of adhesion may be declared unenforceable, in whole or in part . . . .").

on the pleadings seeking declarations on these issues is granted. Grove's cross motion for judgment on the pleadings is denied.