June 1, 2022

**Supreme Court**

No. 2021-63-Appeal.
(PC 20-4463)

EDC Investment, LLC       :
f/k/a EDC Pizza, LLC

          v.         :

    UTGR, Inc.         :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

EDC Investment, LLC       :
f/k/a EDC Pizza, LLC

v.               :

UTGR, Inc.          :

Present: Suttell, C.J., Goldberg, Lynch Prata, and Long, JJ.

# O P I N I O N

**Chief Justice Suttell, for the Court.** The plaintiff, EDC Investment, LLC (EDC), appeals from a Superior Court order granting a motion to dismiss filed by the defendant, UTGR, Inc. (UTGR). On appeal, the plaintiff argues that the hearing justice erred in granting the defendant's motion to dismiss because the hearing justice "failed to follow the standard in ruling on a Rule 12(b)(6) motion." This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the order of the Superior Court.

# I

## Facts and Travel[1]

The plaintiff and defendant entered into a commercial lease agreement in 2000, whereby plaintiff rented space from defendant at Twin River Casino (Twin River) located in Lincoln, Rhode Island (the lease agreement).[2] The lease agreement specified that plaintiff would operate a Ronzio Pizza franchise at Twin River and, according to plaintiff, provided plaintiff with exclusive vendor status for pizza and related food items. Although the lease agreement did not include a specific commencement date, the commencement date was defined as "[t]he earlier of (a) one hundred twenty (120) days from the Delivery Possession Date as defined in Section 2.3, or (b) the date TENANT opens for business to the public." The lease agreement was for an initial term of five years, terminating on the fifth anniversary of the commencement date, with one five-year renewal term and two two-year renewal terms.

---

[1] We glean the facts primarily from the allegations in plaintiff's complaint, all of which we assume are true for purposes of our review of a grant of a motion to dismiss under Rule 12(b)(6). *See Nerney v. Town of Smithfield*, 269 A.3d 753, 756 (R.I. 2022) (stating that, in applying the motion-to-dismiss standard, this Court "assume[s] the allegations contained in the complaint to be true and view[s] the facts in the light most favorable to the plaintiff" (quoting *Crenshaw v. State*, 227 A.3d 67, 71 (R.I. 2020))).

[2] At the time the lease agreement was executed, plaintiff was known as EDC Pizza LLC, d/b/a Ronzio Pizza.

The plaintiff's option to renew the lease agreement was set forth in Section 2.4. Section 2.4 further provided that defendant had the right to terminate any renewal term and had the right to buy out plaintiff's renewal right. Specifically, Section 2.4 of the lease agreement provided:

"LANDLORD shall have the right to terminate, without any liability, the first 5-year renewal term, if the total rent, excluding base rent, paid by TENANT during the Initial Term was less than $60,000 a year on average or less than $300,000 total. LANDLORD shall have the right to terminate, without any liability, the second 2-year renewal term, if the total rent, excluding base rent, paid by TENANT during the first 5-year Renewal Term, was less than $70,000 a year, on average, or $350,000 total. LANDLORD shall have the right to terminate the third 2-year renewal term, if the total rent, excluding base rent, paid by TENANT during the second 2-year Renewal Term, was less than $70,000 a year on average, or $140,000 total. Landlord shall have the right to exercise any termination within thirty (30) days of receipt of final rent revenue information, if available, regardless if any renewal term has commenced. The Initial Term and the Renewal Terms are collectively referred to herein as the 'Term.' Notwithstanding the above, LANDLORD shall have the right to buyout the TENANT's renewal right upon notice to TENANT prior to the expiration of the Initial Term or any of the Renewal Terms, and payment to TENANT of a reasonable amount based on earnings, which payment shall be made upon TENANT'S surrender of the Premises."

In October 2006, the parties renewed the lease for five years, with the renewal term expiring on October 16, 2011. The plaintiff alleged in its complaint that the renewed

lease provided for an additional five-year renewal term, with two consecutive two-year renewal terms.

In June 2011, plaintiff sent notice to Michael Barlow, Vice President of Food and Beverage for Twin River and the Regional Director of Operations for Twin River Management Group, exercising its option to renew the lease agreement for the additional five-year term. On or about September 1, 2011, however, defendant, through its attorney, notified plaintiff that it was terminating the lease agreement, and on September 9, 2011, defendant offered to buy out the lease for $90,000. Prior to September 2011, plaintiff had also received a similar offer from Yehuda Amar, who operated other franchises at Twin River, to buy out the lease agreement for $90,000, which offer plaintiff had rejected.

In October 2011, the parties entered into a termination of lease and release agreement, which provided plaintiff with a buyout for $90,000 (the release). The release stated that the lease term expired on October 16, 2011, and required plaintiff to vacate on or before October 14, 2011, the new termination date. The release also contained a waiver clause stating that:

> "As of the Termination Date, EDC Pizza shall forever fully release Twin River and its employees, directors, officers, agents and attorneys from any and all accounts, actions, agreements, causes of action, claims, contracts, costs, damages, debts, demands, dues, expenses, judgments, liabilities, liens, obligations, offsets, proceedings, rights, suits, and torts, of every kind and nature, both at law and in equity, whether known or

unknown, whether suspected or unsuspected, whether presently accrued or unaccrued, whether or not well founded in fact or in law, that EDC Pizza has ever had, now has, or may in the future have against Twin River and its employees, directors, officers, agents and attorneys and related to the Lease, this Agreement, the Premises and the Building."

In March 2019, plaintiff was contacted by the Rhode Island State Police concerning the lease agreement, and, in December 2019, plaintiff learned that both Barlow and Amar had been indicted. The plaintiff then became aware that Sbarro,[3] also a food vendor, had contacted Barlow in January 2011 regarding the opening of a franchise at Twin River. According to plaintiff, Barlow advised Amar of Sbarro's interest in opening a franchise and then notified Sbarro that Amar was the contact person for leasing space at Twin River.

The plaintiff also learned in 2019 that, in October 2011, defendant entered into a lease with Shai Inc. for the operation of a Sbarro franchise; Amar signed the lease on behalf of Shai Inc.[4] The plaintiff alleged in its complaint that, before its lease agreement with defendant was terminated and the release executed, plaintiff had not been informed of the lease between defendant and Shai Inc., the negotiations between Amar and Sbarro, or a financial arrangement between Barlow and Amar.

---

[3] We understand that "Sbarro," as named in plaintiff's complaint, refers to Sbarro, LLC, a pizzeria chain specializing in New York-style pizza.

[4] The plaintiff alleged that the lease agreement between Shai Inc. and defendant provided for a rent of 7 percent of gross monthly sales, whereas plaintiff's lease agreement with defendant provided for a rent of 12 percent of gross monthly sales.

Barlow and Amar's agreement, plaintiff alleged, resulted in the denial of plaintiff's option to renew the lease agreement.

The plaintiff filed a complaint against defendant on June 11, 2020. The plaintiff alleged breach of fiduciary duty (count one), breach of contract (count two), breach of covenant of good faith and fair dealing (count three), fraud and misrepresentation (count four), negligent misrepresentation (count five), punitive damages (count six), and attorneys' fees (count seven). The defendant moved, pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure, to dismiss the complaint. In support thereof, defendant attached the lease agreement and the release as exhibits to the memorandum in support of its motion to dismiss.

In its motion, defendant argued that, because both the lease agreement and the release had been sufficiently referred to throughout plaintiff's complaint, the hearing justice could consider both documents without converting the motion to dismiss to a motion for summary judgment. The defendant further maintained that plaintiff had released all claims against defendant in the release; alternatively, defendant argued that plaintiff's contractual allegations in the complaint were legally deficient. The plaintiff then filed an objection to defendant's motion to dismiss, arguing that the release was not valid because plaintiff did not have the benefit of counsel and was unaware of the financial arrangement between Barlow and Amar when the release was executed.

A hearing on the motion to dismiss was held on December 18, 2020, and the hearing justice delivered a bench decision that same day. The hearing justice determined that the lease agreement and the release were central to plaintiff's claims and that the lease agreement was sufficiently referred to in plaintiff's complaint. For those reasons, the hearing justice did not convert the motion to dismiss to a motion for summary judgment. After examining the lease agreement and the release, the hearing justice determined that there was no legal basis for plaintiff's claims. The hearing justice therefore granted defendant's motion to dismiss, ruling that the clear and unambiguous language of the lease agreement gave defendant the unconditional ability to exercise its rights under Section 2.4. An order granting defendant's motion to dismiss was entered on December 23, 2020. The plaintiff subsequently filed a timely notice of appeal on January 12, 2021.

**II**

**Standard of Review**

"The sole function of a motion to dismiss is to test the sufficiency of the complaint." *Pontarelli v. Rhode Island Department of Elementary and Secondary Education*, 176 A.3d 472, 476 (R.I. 2018) (brackets omitted) (quoting *Narragansett Electric Company v. Minardi*, 21 A.3d 274, 277 (R.I. 2011)). "In reviewing the grant of a motion to dismiss pursuant to Rule 12(b)(6), this Court applies the same standard as the hearing justice." *Chariho Regional School District, by and through*

*Chariho Regional School Committee v. State*, 207 A.3d 1007, 1012 (R.I. 2019) (*Chariho*) (quoting *Rein v. ESS Group, Inc.*, 184 A.3d 695, 699 (R.I. 2018)). Therefore, "when ruling on a Rule 12(b)(6) motion to dismiss, the trial justice must look no further than the complaint, assume that all allegations in the complaint are true, and resolve any doubts in a plaintiff's favor." *Pontarelli*, 176 A.3d at 476 (brackets omitted) (quoting *Multi-State Restoration, Inc. v. DWS Properties, LLC*, 61 A.3d 414, 416 (R.I. 2013)). "We will affirm a trial justice's grant of a motion to dismiss 'when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief from the defendant under any set of facts that could be proven in support of the plaintiff's claim.'" *Chariho*, 207 A.3d at 1012-13 (quoting *Rein*, 184 A.3d at 699).

However, "when the motion justice receives evidentiary matters outside the complaint and does not expressly exclude them in passing on the motion, then Rule 12(b)(6) specifically requires the motion to be considered as one for summary judgment." *Pontarelli*, 176 A.3d at 476 (quoting *Multi-State Restoration, Inc.*, 61 A.3d at 417).

Turning to the case at bar, the hearing justice, in granting defendant's motion to dismiss, contemplated converting defendant's motion to one for summary judgment due to the existence of the lease agreement and the release, which were outside the four corners of plaintiff's complaint. However, the hearing justice, citing

to federal caselaw, ultimately considered the lease agreement and the release as if they were attached to the complaint because they were central to plaintiff's claims, and the lease agreement was sufficiently referred to in plaintiff's complaint. Although plaintiff did not object to the hearing justice's consideration of the lease agreement and the release, nor did plaintiff raise it as an issue on appeal, we nevertheless address this issue in order to establish the appropriate legal standard of review. *See Mokwenyei v. Rhode Island Hospital*, 198 A.3d 17, 21 (R.I. 2018) ("A threshold issue before us is the appropriate legal standard under which to consider the issue presented to us.").

In *Mokwenyei*, this Court dealt with a similar issue, where a hearing justice, in deciding motions to dismiss, considered documents attached to the motions to dismiss and an exhibit attached to the plaintiff's objection to the motions. *Mokwenyei*, 198 A.3d at 21. We emphasized our holding in *Chhun v. Mortgage Electronic Registration Systems, Inc.*, 84 A.3d 419 (R.I. 2014), wherein this Court declined to adopt the federal courts' "'altered' interpretation of the legal standard employed with respect to a Rule 12(b)(6) motion to dismiss." *Mokwenyei*, 198 A.3d at 21 (quoting *Chhun*, 84 A.3d at 422).

However, notwithstanding our general rule that, when a motion to dismiss includes documents not expressly incorporated in a complaint, it automatically converts to one for summary judgment, we have acknowledged a narrow exception

for "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Mokwenyei*, 198 A.3d at 22 (quoting *Chase v. Nationwide Mutual Fire Insurance Company*, 160 A.3d 970, 973 (R.I. 2017)); *see also Beddall v. State Street Bank and Trust Company*, 137 F.3d 12, 17 (1st Cir. 1998) ("When * * * a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."). In *Mokwenyei*, we ultimately held that factual allegations in the complaint were not expressly linked to or dependent upon the documents attached to the motions to dismiss nor were they central to the plaintiff's claims; we thus determined that "the hearing justice should have expressly converted the motions to dismiss to motions for summary judgment." *Mokwenyei*, 198 A.3d at 22-23; *cf. Doe v. Brown University*, 253 A.3d 389, 395 (R.I. 2021) (holding that a hearing justice's consideration of the "plaintiff's federal complaint, the United States District Court of Rhode Island decision, the First Circuit decision, and the filings in the First Circuit[,]" in deciding a motion to dismiss was "within the purview of the recognized exception" because the documents were "clearly 'official public records'") (brackets omitted).

Applying the exception to the case at bar, plaintiff explicitly referred to both the lease agreement and the release throughout the complaint. Moreover, the allegations in the complaint are expressly linked to and dependent upon the lease agreement and the release, and plaintiff has not challenged the authenticity of the documents; rather, only the release's validity has been contested by plaintiff, based on the later-discovered developments concerning Barlow and Amar. Accordingly, we "examin[e] plaintiff's arguments within the confines of the standard of review applied to motions to dismiss." *Doe*, 253 A.3d at 395.

### III

### Discussion

On appeal, plaintiff first reiterates its argument made before the Superior Court in response to defendant's motion to dismiss; specifically, plaintiff argues that the release was not valid and therefore not a bar to its recovery. The defendant maintains that plaintiff's claims were fully and unconditionally released pursuant to the unambiguous language of the release. The focus of plaintiff's argument then turns to its claims of breach of fiduciary duty and breach of the covenant of good faith and fair dealing. We note that the hearing justice did not base her decision on the language of the release; rather, she concentrated on Section 2.4 of the lease agreement in dismissing the plaintiff's complaint. In a similar fashion, her findings were limited to plaintiff's claims of breach of fiduciary duty, breach of contract, and

breach of the covenant of good faith and fair dealing. Accordingly, we confine our review to the hearing justice's findings.

## A

## Breach of Fiduciary Duty

The plaintiff contends that it was owed a fiduciary duty by defendant during the negotiations concerning its option to renew the lease agreement—the renewal of which was declined because, plaintiff argues, there was a "'behind the scene' agreement" between Barlow and Amar. The plaintiff relies on *Joslin v. Astle*, 59 R.I. 182, 194 A. 703 (1937), to support its argument that the relationship between the parties was more than the standard landlord-tenant arrangement, and thus a fiduciary duty existed. Specifically, plaintiff points out that the lease agreement provided for a rent based on gross monthly sales, included an exclusive right to the food product, and contained options to renew. The defendant, for its part, asserts that the hearing justice properly dismissed count one because no fiduciary duty arose from the commercial lease relationship between the parties.

At the hearing on defendant's motion to dismiss, the hearing justice found there to be a distinct difference between the facts of this case and that of *Joslin*. We agree in that the facts of *Joslin* "establish[ed] a chain of circumstances relating back to the making of the lease," which included a preexisting familial relationship based on "confidence and trust." *Joslin*, 59 R.I. at 197, 198, 194 A. at 709. Conversely,

we view the facts of the present case as only establishing a rather typical commercial landlord-tenant relationship. The exclusivity provision of the lease agreement and the rent being based on gross sales do not elevate the parties' relationship to one that is similar to the familial relationship between the parties in *Joslin*.

"A fiduciary duty 'is one of trust and confidence and imposes the duty on the fiduciary to act with the utmost good faith.'" *Poletti v. Glynn*, 234 A.3d 941, 945 (R.I. 2020) (quoting *Notarantonio v. Notarantonio*, 941 A.2d 138, 145 (R.I. 2008)). Although this Court has acknowledged that we have "refrained from establishing a hard-and-fast rule as to when a fiduciary relationship arises," we have noted that the determination of whether a duty exists "may involve a 'variety of factors[.]'" *Id.* (quoting *Simpson v. Dailey*, 496 A.2d 126, 129 (R.I. 1985)). Those factors may include "the reliance of one party upon the other, the relationship of the parties prior to the incidents complained of, the relative business capacities or lack thereof between the parties, and the readiness of one party to follow the other's guidance in complicated transactions." *Simpson*, 496 A.2d at 129. Unlike in *Joslin*, where extraordinary circumstances created a fiduciary duty between a landlord and tenant, *Joslin*, 59 R.I. at 198, 194 A. at 710, plaintiff has not established factors—other than a typical commercial landlord-tenant association—that would impose a fiduciary duty. Accordingly, the hearing justice did not err in dismissing plaintiff's claim of breach of fiduciary duty.

- 13 -

# B

## Breaches of Contract and the Covenant of Good Faith and Fair Dealing

In its complaint, plaintiff alleges that defendant did not inform plaintiff of its negotiations with a successor lessee, nor was plaintiff aware of the arrangement between Barlow and Amar prior to plaintiff receiving notice of defendant's intent to terminate the lease agreement and buy out plaintiff's lease rights. As a result, plaintiff alleges a breach of contract and a breach of the covenant of good faith and fair dealing. The defendant maintains, on the other hand, that there is no contractual disclosure obligation in the lease agreement, and that therefore a breach-of-contract claim fails as a matter of law. Consequently, defendant contends, plaintiff's allegation of breach of the covenant of good faith and fair dealing also must fail. In her bench decision, the hearing justice determined that there was no breach of contract "because the contract was clear and unambiguous[,]" and she likewise found that there was no breach of the covenant of good faith and fair dealing.

Our analysis turns on the language of Section 2.4 of the lease agreement. "In determining whether language in a contract is ambiguous, 'we give words their plain, ordinary, and usual meaning.'" *Botelho v. City of Pawtucket School Department*, 130 A.3d 172, 176 (R.I. 2016) (quoting *JPL Livery Services, Inc. v. Rhode Island Department of Administration*, 88 A.3d 1134, 1142 (R.I. 2014)). "The subjective intent of the parties may not properly be considered by the Court; rather, we consider

the intent expressed by the language of the contract." *Id.* (quoting *JPL Livery Services, Inc.*, 88 A.3d at 1142). We "refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity * * * where none is present." *Young v. Warwick Rollermagic Skating Center, Inc.*, 973 A.2d 553, 559 (R.I. 2009) (quoting *Mallane v. Holyoke Mutual Insurance Company in Salem*, 658 A.2d 18, 20 (R.I. 1995)).

In our judgment, the language of Section 2.4 is unambiguous. The language is comprehensive and straightforward. The plain, unambiguous terms of Section 2.4 do not require defendant to advise plaintiff as to the reasons for denial of plaintiff's offer to renew. Section 2.4 additionally does not require defendant to disclose to plaintiff any agreement or negotiations between defendant and potential third-party successor lessees. The hearing justice found that Section 2.4 solely provided that, upon notice prior to expiration of the initial term or any renewal terms and payment of a reasonable amount, defendant had the unconditional right to buy out plaintiff's renewal right. The defendant complied with Section 2.4 when it sent plaintiff notice of its intent to terminate the lease agreement and offered a $90,000 buyout, which plaintiff accepted. Therefore, plaintiff's claim of breach of contract was properly dismissed.

Similarly, the plaintiff's claim of breach of the covenant of good faith and fair dealing must also fail. "It is well settled that virtually every contract contains an

implied covenant of good faith and fair dealing between the parties." *Premier Home Restoration, LLC v. Federal National Mortgage Association*, 245 A.3d 745, 749 (R.I. 2021) (quoting *Ferreira v. Child and Family Services*, 222 A.3d 69, 76 (R.I. 2019)). "However, 'the implied covenant of good faith and fair dealing does not create an independent cause of action,' but must be connected to a breach-of-contract claim." *Id.* at 750 (brackets omitted) (quoting *Ferreira*, 222 A.3d at 76). Because the plaintiff's breach-of-contract claim against the defendant was properly dismissed, the hearing justice did not err in dismissing the plaintiff's claim of breach of the covenant of good faith and fair dealing.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the order of the Superior Court. The record may be returned to the Superior Court.


Justice Robinson did not participate.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | EDC Investment, LLC f/k/a EDC Pizza, LLC v. UTGR, INC. |
| **Case Number** | No. 2021-63-Appeal.<br>(PC 20-4463) |
| **Date Opinion Filed** | June 1, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Netti C. Vogel |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Edward R. McCormick, Esq. |
| | For Defendant:<br><br>Kyle Zambarano, Esq. |

SU-CMS-02A (revised June 2020)